UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| MICHELE LEUTHAUSER, | Case No. 2:20-CV-479 JCM (VCF) |
| Plaintiff(s), | ORDER |
| v. | |
| UNITED STATES OF AMERICA, et al., | |
| Defendant(s). | |

Presently before the court is defendant United States of America's ("the government") motion to dismiss. (ECF No. 11). Plaintiff Michele Leuthauser ("plaintiff") filed a response (ECF No. 12), to which the government replied (ECF No. 13).

**I.  Background**

The present case stems from an incident that occurred on June 30, 2019, at McCarran International Airport. (*See* ECF No. 1). Plaintiff alleges that an unknown Transportation Security Administration agent ("defendant TSA agent") sexually assaulted her during a security screening. *Id.* at 1. Plaintiff was a passenger for a flight departing from Las Vegas. *Id.* at 3. When plaintiff proceeded through a TSA security screening checkpoint, she went through a body scanner, which set off an alarm. *Id.* The body scanner operator informed plaintiff that she needed to submit to a "groin search" and the defendant TSA agent instructed plaintiff to accompany her to a private room. *Id.*

Plaintiff followed the defendant TSA agent into a private room where an additional TSA agent was present. *Id.* There was a mat in the private room with footprints on it to indicate how a passenger should stand during a pat-down. *Id.* at 4. Plaintiff stood on the mat as indicated, but the defendant TSA agent instructed her to widen her stance. *Id.* The defendant TSA agent began

**James C. Mahan**
**U.S. District Judge**

the pat-down by sliding her hands along the inside of plaintiff's thigh and proceeded to digitally penetrate and inappropriately fondle plaintiff. *Id.* As a result, plaintiff became severely distressed. *Id.* at 5. A supervisor arrived and dismissed the defendant TSA agent and completed the pat-down. *Id.* Plaintiff then contacted airport police, but they advised plaintiff that the TSA was outside of their jurisdiction and did not take action. *Id.*

Plaintiff now bring claims for unreasonable search, battery, and intentional infliction of emotional distress ("IIED"). *Id.* at 6–11. The government now moves to dismiss the claims brought against it for lack of subject matter jurisdiction.

**II.     Legal Standard**

Federal courts are courts of limited jurisdiction. *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978). "A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." *Stock West, Inc. v. Confederated Tribes of Colville Reservation*, 873 F.2d 1221, 1225 (9th Cir. 1989). Thus, federal subject matter jurisdiction must exist at the time an action is commenced. *Mallard Auto. Grp., Ltd. v. United States*, 343 F. Supp. 2d 949, 952 (D. Nev. 2004).

Federal Rule of Civil Procedure 12(b)(1) allows defendants to seek dismissal of a claim or action for a lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Dismissal under Rule 12(b)(1) is appropriate if the complaint, considered in its entirety, fails to allege facts on its face sufficient to establish subject matter jurisdiction. *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 546 F.3d 981, 984–85 (9th Cir. 2008).

Although the defendant is the moving party in a 12(b)(1) motion to dismiss, the plaintiff is the party invoking the court's jurisdiction. As a result, the plaintiff bears the burden of proving that the case is properly in federal court to survive the motion. *McCauley v. Ford Motor Co.*, 264 F.3d 952, 957 (9th Cir. 2001) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)). More specifically, the plaintiff's pleadings must show "the existence of whatever is essential to federal jurisdiction, and, if [plaintiff] does not do so, the court, on having the defect called to its attention or on discovering the same, must dismiss the case, unless the defect be corrected by amendment." *Smith v. McCullough*, 270 U.S. 456, 459 (1926).

**James C. Mahan**
**U.S. District Judge**

In moving to dismiss under Rule 12(b)(1), the challenging party may either make a "facial attack," confining the inquiry to challenges in the complaint, or a "factual attack" challenging subject matter on a factual basis. *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003). For a facial attack, the court assumes the truthfulness of the allegations, as in a motion to dismiss under Rule 12(b)(6). *Trentacosta v. Frontier Pac. Aircraft Indus., Inc.*, 813 F.2d 1553, 1559 (9th Cir. 1987). By contrast, when presented as a factual challenge, a Rule 12(b)(1) motion can be supported by affidavits or other evidence outside of the pleadings. *United States v. LSL Biotechs.*, 379 F.3d 672, 700 n.14 (9th Cir. 2004) (citing *St. Clair v. City of Chicago*, 880 F.2d 199, 201 (9th Cir. 1989)).

## III.   Discussion

Plaintiff brings two claims against the government: battery and intentional infliction of emotional distress ("IIED") under the Federal Tort Claims Act ("FTCA").

"Sovereign immunity is an important limitation on the subject matter jurisdiction of federal courts." *Vacek v. U.S. Postal Service*, 447 F.3d 1248, 1250 (9th Cir. 2006) (citations omitted). Thus, the government's consent to be sued "is a prerequisite for jurisdiction." *United States v. Mitchell*, 463 U.S. 206, 212 (1983). The Federal Tort Claims Act's ("FTCA") waives sovereign immunity, but that waiver is subject to several exceptions that must be strictly construed in the government's favor. *Cadwalder v. United States*, 45 F.3d 297, 300 (9th Cir. 1995). The law enforcement proviso of the FTCA waives sovereign immunity for intentional tort claims, including battery and IIED, that are based on the conduct of "investigative or law enforcement officers." 28 U.S.C. § 2680(h); *see also Millbrook*, 569 U.S. 50, 52–53 (2013).

The salient issue in this case is whether a TSA agent is an "investigative or law enforcement officer" for the purposes of the FCTA. This appears to be an issue of first impression before this court.

The government argues that "the text, context, and history of the law-enforcement proviso show that it does not apply to TSA screeners conducting administrative checkpoint searches of airlines passengers and their property." (ECF No. 13 at 6). Specifically, it contends that plaintiff's claim should be dismissed because the law enforcement proviso applies only to "traditional

**James C. Mahan
U.S. District Judge**

- 3 -

investigative or law enforcement officers, *not* [to] TSA security screeners conducting administrative searches." (ECF No. 11 at 6).

Questions of statutory interpretation begin by determining whether the statute's language has a "plain and unambiguous meaning with regard to the particular dispute in the case." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997). While the court need not look beyond a statute's natural reading, it may consider other tools of statutory construction "in close cases, or where the statutory language is ambiguous" to ensure that the statute as a whole is "'coherent and consistent.'"[1] *United States v. Monsanto*, 491 U.S. 600, 611 (1989); *Robinson*, 519 U.S. at 340 (quoting *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 240 (1989)).

Although plaintiff centralizes her counterargument on the "investigative or" portion of the proviso, the court instead looks to the FTCA's provided definition. *See Meese v. Keene*, 481 U.S. 465, 484–85 (1987) ("It is axiomatic that the statutory definition of the term excludes unstated meanings of that term"). The FTCA defines investigative or law enforcement officers as "any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law." 28 U.S.C. § 2680(h).

The TSA delineates Transportation Administration Officers ("TSOs") into two categories: (1) TSA screeners and (2) law enforcement officers. *See* 49 U.S.C. § 114(e), 49 U.S.C. § 114(p). In addition to security screening personnel responsibilities, law enforcement officers may carry firearms, *make arrests*, and "seek and *execute warrants* for arrest or *seizure of evidence . . .*" 49 U.S.C. § 114(p) (emphasis added). While the court find that the duties of TSA law enforcement officers align with the FTCA's definition of investigative or law enforcement officers, the responsibilities of TSA screeners require further analysis.

Plaintiff does not contend that TSA screeners are law enforcement officers. (ECF No. 12 at 3). Rather, plaintiff argues that TSA screeners both "execute searches" and "seize evidence" as

---

[1] The government relies on the law enforcement proviso's legislative history. Because the proviso is unambiguous, the court need not—and should not—consider the legislative history. *See Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 568 (2005) ("Judicial investigation of legislative history has a tendency to become . . . an exercise in looking over a crowd and picking out your friends") (internal quotation marks and citation omitted).

**James C. Mahan**
**U.S. District Judge**

- 4 -

1  defined by the FTCA and are therefore covered by the law enforcement proviso.  (*See* ECF No.
2  12).  The court turns to the responsibilities of TSA screeners to assess the proviso's applicability.

3        TSA screeners are empowered by law to conduct "the screening of all passengers and
4  property."  49 U.S.C. § 44901(a).  "TSA screeners perform limited, consensual searches that are
5  administrative in nature."  *Weinraub v. United States*, 927 F. Supp. 2d 258, 262 (E.D.N.C. 2012).
6  Additionally, "TSA screeners are limited to the single administrative goal of searching for possible
7  safety threats related to explosives."  *United States v. McCarty*, 648 F.3d 820, 831 (9th Cir.
8  2011), as amended (Sept. 9, 2011).

9        First, the word "execute" means "to perform or complete."  Black's Law Dictionary (10th
10  ed. 2009 at 689).   The court finds that TSA screeners do, indeed, "perform or complete"
11  screenings.  Alternatively, the word "search" means "an examination of a person's body, property,
12  or other area that the person would reasonably be expected to consider as private, *conducted by a*
13  *law-enforcement officer* for the purpose of finding evidence of a crime."  *Id.* at 1551–52 (emphasis
14  added).  The definition of "search" invokes traditional law enforcement responsibilities as opposed
15  to the consensual, administrative screenings performed by TSA screeners.[2]  Additionally, as the
16  government argues, "'execute searches' connotes an individual imbued with police powers." (ECF
17  No. 13 at 3).  This court agrees.  When reading the proviso in its entirety, "execute searches,"
18  "seize evidence," and "make arrests" connote traditional law enforcement officer responsibilities,
19  as opposed to the administrative screenings performed by TSA screeners.  Accordingly, the court
20  finds that TSA screeners do not "execute searches" within the meaning of the FTCA.

21        The court now examines TSA screener responsibilities as they pertain to seizing evidence.
22  Plaintiff argues that "immediately on discovery [of illegal contraband] [TSA screeners] seize the
23  items and *summon law enforcement.*"  (ECF No. 12 at 5) (emphasis added).   Although TSA
24  screeners may be tasked with identifying evidence, it is ultimately—as plaintiff admits—the law
25  enforcement officer who is summoned to take action.  Moreover, when screeners find evidence of
26  prohibited items (as opposed to illegal contraband) "the screener gives the passenger the option of

---

28      [2] Indeed, an "administrative search" is "not related to a criminal investigation . . ." Black's Law Dictionary (10th ed. 2009 at 1552).

**James C. Mahan**
**U.S. District Judge**

- 5 -

disposing of the item, leaving the item with someone, taking the item back to their vehicle, or abandoning the item." *Welch v. Huntleigh USA Corp.*, No. 04-663 KI, 2005 WL 1864296, at *5 (D. Or. Aug. 4, 2005). This is not an act of seizing evidence. Accordingly, the court does not find that TSA screeners "seize evidence" within the meaning of the proviso.

The court finds that the proviso does not include TSA screeners, because they do not execute searches, seize evidence, or make arrests. The Second Circuit recently concluded similarly that whether "the TSA agent in question was a screener or a law enforcement officer may have an impact on the law enforcement proviso analysis." *Leytman v. United States Dep't of Homeland Sec. Transportation Sec. Admin.,* 804 F. App'x 78, 81 (2d Cir. 2020).

Here, the complaint does not indicate whether the defendant TSA agent is a law enforcement officer or a security screener. Rather, plaintiff refers to the defendant TSA agent as a "[t]ransportation [s]ecurity [o]fficer." (ECF No. 1 at 2). Determining whether the defendant TSA agent is a law enforcement officer or a TSA screener is a fact intensive inquiry. Therefore, it is not appropriate for the court to dismiss plaintiff's claims at this stage of proceedings. The court denies the government's motion.

**IV.     Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that the government's motion to dismiss (ECF No. 11) be, and the same hereby is, DENIED.

DATED August 12, 2020.

_____
UNITED STATES DISTRICT JUDGE

**James C. Mahan**
**U.S. District Judge**