NICHOLAS A. TRUTANICH
United States Attorney
District of Nevada
Nevada Bar No. 13644

BRIANNA SMITH
Assistant United States Attorney
Nevada Bar No. 11795
501 Las Vegas Blvd. So., Suite 1100
Las Vegas, Nevada 89101
(702) 388-6336
Brianna.Smith@usdoj.gov

*Attorneys for the United States
and Anita Serrano*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| Michele Leuthauser,<br><br>          Plaintiff,<br><br>     v.<br><br>United States of America; Unknown Transportation Security Administration Officer,<br><br>          Defendants. | Case No. 2:20-cv-479-JCM-VCF<br><br>**Defendants' Motion for Protective Order Regarding Sensitive Security Information** |

Defendants United States of America and Anita Serrano ("defendants") hereafter move for a protective order precluding plaintiff Michele Leuthauser from seeking to obtain disclosure of Sensitive Security Information. Through discovery to date, plaintiff Michele Leuthauser ("plaintiff"), through counsel, has sought information designated by the Transportation Security Administration ("TSA") as Sensitive Security Information ("SSI"), a category of protected information under 49 U.S.C. § 114(r), beyond the means authorized by Congress. Pursuant to federal statute and regulations, SSI cannot be disclosed to anyone who (1) is not designated as a "covered person" with a "need to know" and (2) has not complied with the regulatory framework requiring a background check and terrorism assessment. Accordingly, pursuant to Fed. R. Civ. P. 26(c)(1)(A), a protective order should be entered to preclude the unauthorized disclosure of SSI, particularly as to defendant

Anita Serrano, the individual-capacity defendant in this matter, as she is not authorized to disclose SSI and does not wholly control the SSI to which plaintiff appears to seek access.

<u>**Memorandum of Points and Authorities**</u>

**I.      Relevant Background**

Plaintiff filed the instant lawsuit alleging that she was sexually assaulted during a pat-down performed by an unidentified TSA employee at the McCarran Las Vegas International Airport on June 30, 2019. *See generally*, ECF No. 4.  All of these allegations are strongly denied. *See* ECF Nos. 11, 18, 31, 32, 34, 49.

Defendant United States filed a Motion to Dismiss Plaintiff's Federal Tort Claims Act ("FTCA") claims on June 26, 2020, arguing that the employee was not a law enforcement officer within the meaning of the FTCA's law enforcement proviso; as such, the Court was deprived of subject-matter jurisdiction over Plaintiff's FTCA claims.  *See generally*, ECF No. 11.  The Court agreed in principle, although the Motion to Dismiss was denied.  As the Court's Order explains, "the complaint does not indicate whether the defendant TSA agent is a law enforcement officer or a security screener…. Determining whether the defendant TSA agent is a law enforcement officer or a TSA screener is a fact intensive inquiry.  Therefore, it is not appropriate for the court to dismiss plaintiff's claims at this stage of proceedings."  *See* ECF No. 17 at 6.

Plaintiff and defendant United States submitted their joint proposed discovery plan on August 11, 2020.  ECF Nos. 14, 15.  Defendant United States filed its Answer on August 26, 2020.  ECF No. 18.

Thereafter, on September 22, 2020, plaintiff moved to substitute Lead Transportation Security Officer Anita Serrano ("Serrano") as a defendant in the case, identifying her as the TSA employee who performed the pat down of Plaintiff on July 30, 2019.  ECF No. 22.  Serrano became a defendant to the case in her individual capacity on September 28, 2020. ECF No. 25.  Serrano's first responsive pleading, a motion to dismiss the Fourth Amendment *Bivens* claim against her and advancing the claim of qualified immunity, was filed on December 28, 2020.  ECF No. 31.  That motion remains pending.

2

Further, on December 30, 2020, Defendant United States filed a notice substitution, certifying that Defendant Serrano was acting within the course and scope of her duties with TSA at all times relevant to the Complaint, and substituting itself for the two state tort claims filed against Defendant Serrano.  ECF No. 32.[1]  As a result, the current claims in this case are as follows:

- FTCA claims of civil battery and intentional infliction of emotional distress pending against Defendant United States to the extent that Serrano is considered a law enforcement officer; and

- Fourth Amendment unreasonable search against Defendant Serrano, although her fully-dispositive motion to dismiss is pending.

On December 13, 2020, Plaintiff propounded a set of discovery requests (interrogatories and requests for production) on the United States.  In the United States' discovery responses, withheld responsive items were identified on a privilege log.[2]  The privilege log identifies the documents withheld on the basis that the responsive information contains SSI.

On January 4, 2020, plaintiff was informed by defendant that 49 C.F.R. § 1520.5 carves out certain areas of inquiry that are maintained as SSI which includes screening procedures and plaintiff understood that DHS Appropriations Act at § 525(d)  (49 CFR § 1520.7) outlines a procedure, which includes a background check.[3]

---

[1] Plaintiff filed a challenge to the United States' certification of Serrano, which has not yet been ruled upon.  ECF No. 44.

[2] **Exhibit A,** United States' Answers to Interrogatories; **Exhibit B**, United States' Responses to Plaintiff's Requests for Production of Documents; **Exhibit C**, Defendants' Privilege Log.

[3] Additionally, plaintiff's counsel is familiar with the protections for SSI as it has arisen in other cases plaintiff's counsel has unsuccessfully litigated against the TSA on behalf of himself.  *See* **Exhibit D,** Motion to Seal and **Exhibit E**, Order Granting Motion to Seal.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Plaintiff conducted the deposition of defendant Anita Serrano on January 8, 2021. Serrano was instructed not to disclose SSI in her testimony.  As a result, Serrano did not provide responses to the following questions:

1) Can you briefly describe [. . .] the subject matter of your training?

2) Did the training include anything regarding when a private room is available or required to be used by a passenger who is being screened?

3) If the AIT were to detect something around my client's lower abdomen, would that alarm be a groin area?

4) What is the difference between a resolution pat-down and the pat-down you intended to perform on my client?

5) Is the output of the body scanner the thing that causes a targeted pat-down to be required versus a simple resolution pat-down?

6) Why did you [Serrano] ask for assistance with the private screening?

7) Ms. Serrano, is it a TSA policy that in a private room, there should be two or more screeners?

8) Based on your training, does TSA policy ever allow a screener to press her fingers between the labia of a passenger?

9) Does TSA procedure ever allow for a body cavity search?

*See* **Exhibit F,** Deposition Transcript of Anita Serrano, pgs. 5, 35, 39, 40, 46, 72, 74.

The operative deadline to file a motion to compel the above deposition questions is February 12, 2021.  ECF No. 55.  Because the issue directly involves Serrano's disclosure of SSI designated by the TSA (and not the individual defendant Serrano), plaintiff's attempt to elicit SSI from her directly is improper, and any discovery motion regarding SSI should be directed – if at all – to Defendant United States, as the party in this matter responsible for maintaining the information in question and ensuring adherence to congressionally-mandated strictures regarding SSI, including in the context of litigation. The instant motion addresses the restrictions upon disclosure of SSI and seeks to determine the rights of the respective parties to protect and use the SSI information in the litigation of the case.

## II.    LR 26-6 Meet and Confer

Defendants submit this motion to resolve the current dispute concerning the responsive SSI discovery, as well as other discovery items that concern SSI.  The parties conferred on January 8, 2021 and subsequently regarding Serrano's SSI deposition questions and more recently about the CCTV video.

Independently, defendants may use TSA's Screening Checkpoint Standard Operating Procedures ("SOP"), which have been designated as SSI, as well as information from a Department of Homeland Security OIG Report regarding plaintiff's pat down, which contains SSI, as part of their defense in the case, including submitting the material under seal in support of a motion for summary judgment. *E.g.,* Ex. D.  Accordingly, for efficiency purposes and conservation of judicial resources and the resources of the parties, defendants seek to obtain a court ruling on the proper parameters of disclosing SSI all at once.

## III.   The Obligations Imposed by TSA Regulations

### A.    Background

Since 1974, Congress has required the federal agency responsible for civil aviation security to issue regulations prohibiting the disclosure of certain information in the interest of protecting air transportation. *See* Pub. L. No. 93-366, § 316, 88 Stat. 409, 415-17 (1974). Beginning in 2001, that agency has been the Transportation Security Administration. *See* Pub. L. No. 107-71, § 101, 115 Stat. 597, 596-604 (2001) (transferring this authority from the Federal Aviation Administration to the newly created TSA).  Pursuant to 49 U.S.C. § 114(r) (formerly § 114(s)), the Under Secretary of TSA "shall prescribe regulations prohibiting the disclosure of information obtained or developed in carrying out security . . . if the [Administrator] decides that disclosing the information would . . . be detrimental to the security of transportation." 49 U.S.C. § 114(r)(1)(C).  Under that mandate, the Administrator has provided a definition of SSI, as well as a list of certain categories of information that are SSI.  *See generally* 49 C.F.R. § 1520.5 (defining SSI and providing a list of particular categories of SSI).

Under TSA's regulations, SSI is "information obtained or developed in the conduct of security activities . . . the disclosure of which TSA has determined would… be detrimental to the security of transportation." *See* 49 C.F.R. § 1520.5(a)(3). In its regulations, TSA has established a non-exhaustive list of information that constitutes SSI. *See* 49 C.F.R. § 1520.5(b). Examples of SSI include airport and air carrier security programs and plans, screening equipment, performance specifications, security inspection or investigative information, identifying information of certain transportation security personnel (such as Federal Air Marshals), and, most relevant to the facts of this matter, security screening information, such as "any procedures . . . for screening of persons, accessible property, checked baggage, U.S. mail, stores, and cargo, that is conducted by the Federal government or any other authorized person." 49 C.F.R. § 1520.5(b)(9)(i); *see also* 49 C.F.R. § 1520.5(b). TSA's designation of information as SSI is reviewable only in the United States Courts of Appeals. *See* 49 U.S.C. § 46110(a); *MacLean v. Dep't of Homeland Security*, 543 F.3d 1145, 1149 (9th Cir. 2008) (affirming agency order that text message was SSI); *Robinson v. Napolitano*, 689 F.3d 888, 892 (8th Cir. 2012) (upholding TSA redactions of SSI in exhibits intended for use at trial on an employment discrimination matter).

**B.    Access to SSI**

"[I]n the wake of September 11, 'it has been the consistent policy of TSA that the present and continuing threat of terrorist attacks against aviation interests requires that the number of persons having access to SSI be significantly and continually decreased, rather than increased. Thus, TSA has adopted a position of non-disclosure of SSI to litigants in civil cases who do not otherwise have a statutorily defined need to know.'" *In re Sept. 11 Litig.*, 236 F.R.D. 164, 170 (S.D.N.Y. 2006). Access to SSI is limited to "covered persons" who have a "need to know" the information "carrying out transportation security activities." *See* 49 C.F.R. §§ 1520.7(j), 1520.11(a)(1). Covered persons include Department of Homeland Security ("DHS") employees such as the individual defendant, Serrano, in this action. *See* 49 C.F.R. § 1520.7(k). This Court is considered a "person with a need to know" under 49 C.F.R. § 1520.11(b) ("A Federal…government employee has a need to

know SSI if access to the information is necessary for the performance of the employee's official duties…").  In addition, attorneys for covered persons have a need to know SSI when such information is necessary in order to represent a covered person/party in litigation. *See* 49 C.F.R. § 1520.11(a)(4).  Covered persons may not disclose SSI to non-covered persons without a need to know. *See* 49 C.F.R. § 1520.9(a)(2).  Unauthorized disclosure of SSI can lead to a civil penalty, corrective action, and/or appropriate personnel action if the unauthorized disclosure is made by a Federal employee.  *See* 49 C.F.R. § 1520.17.

Non-covered persons do not gain access to SSI simply by filing a lawsuit.  Rather, non-covered persons may only obtain access to SSI by complying with Section 525(d) of the Department of Homeland Security Appropriations Act of 2007, Pub. L. No. 109-295 (the "Act"), as reenacted.[4]  In civil proceedings, when a party demonstrates a substantial need for relevant SSI in the preparation of the party's case *and* an undue hardship to obtain equivalent information by other means, the party or the party's counsel shall be designated as a covered person under 49 CFR § 1520.7, provided that (1) the overseeing judge enters an order protecting the SSI from unauthorized disclosure; (2) the individual undergoes a criminal history records check and threat assessment by TSA; and (3) TSA determines that providing access to the specific SSI in question in a particular proceeding does not present a risk of harm to the nation.  *See* § 525(d) of the Act; *see also, McSwain v. United States,* No. 2:15-cv-01321-GMN-GWF (D. Nev. Aug. 30, 2016) ("Consistent with Section 525(d), the

---

[4] Section 525(d) of the Department of Homeland Security Appropriations Act of 2007, Pub. L. No. 109-295, § 525(d), 120 Stat. 1355, 1382 (Oct. 4, 2006) ("Section 525(d)"), as reenacted by the Consolidated Appropriations Act, 2008, Pub. L. No. 110-161, Division E, § 522, 121 Stat. 2074 (Dec. 26, 2007); Consolidated Security, Disaster Assistance, and Continuing Appropriations Act, 2009, Pub. L. No. 110-329, Division D, § 510, 122 Stat. 3682 (Sept. 30, 2008); Legislative Branch Appropriations and Continuing Appropriations Resolution of 2010, Pub. L. 111-68, Division B, § 101, 123 Stat. 2044 (Oct. 1, 2009); Department of Homeland Security Appropriations Act, 2010, Pub. L. No. 111-83, Division B, § 510, 123 Stat. 2170 (Oct. 28, 2009); Department of Defense and Full-Year Continuing Appropriations Act, 2011, Pub. No. 112-10, §§ 1101(a)(3), 1104, 125 Stat. 102 (Apr. 15, 2011); Consolidated Appropriations Act, 2012, Division D, § 510, Pub. L. No. 112-74 (Dec. 23, 2011).

Court will enter a protective order providing that disclosure of the documents is restricted to plaintiff and/or plaintiff's counsel [. . .] and may only be used for purposes of this case. Production shall also be subject to any necessary prior background check that the TSA reasonably believes is necessary.").

Section 525(d) further provides that orders granting access to SSI under this section may be appealed immediately to the Courts of Appeals and that DHS may impose a civil penalty of up to $50,000 for each violation of the SSI regulations by those who obtain access to SSI under the section.

Failure to follow this regulatory procedure bars access to SSI.

**IV.    TSA's SSI Designations Are Only Reviewable by the Court of Appeals**

TSA has identified the following information as potentially containing or affirmatively containing SSI:  (1) Certain topics from Serrano's deposition, *supra*; (2) TSA's Screening Checkpoint Standard Operating Procedures; (3) one of the CCTV videos as containing screening procedures which are SSI; and (4) portions of the DHS OIG report into plaintiff's screening experience at LAS.[5]  Plaintiff may seek to challenge any or all of these designations. However, as explained in *Corbett v. Transportation Security Administration,* No. 12-20863, 2013 WL 12333438 (S.D. Fla. Sept. 3, 2013), "district courts have no

---

[5] Contemporaneously submitted ex parte and *in camera*, pursuant to LR 10-4, to aide in the Court's review of this motion, are additional subject items designated as SSI:

1)    A CD containing CCTV video surveillance (revealing screening procedures), bates numbered US000068PRIV;

2)    A CD, produced in this case, containing a cropped CCTV video (of US000068PRIV) which removes SSI from the video but discloses the relevant part of the video that shows the plaintiff;

3)    Office of Inspector General's ("OIG") Report of Investigation, bates numbered US000204-379PRIV.  The OIG Report is currently under review for privilege and portions of the report that do not contain SSI or any other information subject to privilege, including the Privacy Act, will be produced under a protective order, and,

4)    Standard Operating Procedure ("SOP") governing pat-down procedure, bates numbered US000069-203PRIV.

authority to review the actual substance of SSI designations, as the jurisdiction to do so lies exclusively within the Court of Appeals." *See* 49 U.S.C. § 46110(a) (a person challenging the designation of information as SSI "may apply for review of the order by filing a petition in the United States Court of Appeals for the District of Columbia Circuit or in the court of appeals of the United States for the circuit in which the person resides or has its principal place of business"); *Skurow v. U.S. Dep't of Homeland Sec.*, 892 F. Supp. 2d 319, 331 (D.D.C. 2012) (concluding that the district court "lack[ed] jurisdiction to review the substance of the TSA's SSI designations"); *In re September 11 Litig.*at 174–75 ("District Courts are without jurisdiction to entertain challenges to TSA's determinations."); *Chowdhury v. Nw. Airlines Corp.*, 226 F.R.D. 608, 614 (N.D. Cal. 2004) ("Congress has expressly provided that an appeal from an order of the TSA pursuant to  section 114(s) lies exclusively with the Court of Appeals."); *Shqeirat v. U.S. Airways Grp., Inc.,* No. 07-1513, 2008 WL 4232018, at *2 (D. Minn. Sept. 9, 2008) ("District Courts are without jurisdiction to entertain challenges to the TSA's decisions regarding disclosure of SSI.").

**IV.    A Protective Order Is Necessary to Protect the Disclosure of SSI in This Case**

Defendants United States and Serrano, and their undersigned counsel, as well as the Court and its employees, are covered entities with a need to know and use SSI in the defense of the allegations made in this case.  *See* 49 C.F.R. §§ 1520.7(h), (k), 1520.11(b)(1). However, the plaintiff and plaintiff's counsel (as well as any of his employees) are not authorized to access the subject SSI because they have not invoked or satisfied the procedures for seeking access to SSI in litigation.

As detailed above, a party or her counsel seeking access to SSI must demonstrate to TSA that (a) the party has a substantial need for relevant SSI and that (b) she is unable without undue hardship to obtain the substantial non-SSI equivalent of the information.  If TSA determines that the party has successfully demonstrated these requirements (or if the court makes such a determination upon a review of a decision by TSA that such requirements have not been met), TSA will designate plaintiff's counsel as a covered person under 49 C.F.R. § 1520.7 and grant access to SSI, but only after plaintiff's counsel passes a

criminal history records check and terrorist assessment. TSA may determine that disclosure of specific SSI may present a risk of harm to the nation and prevent disclosure despite successful completion of this vetting process.[6] If all of the statutory requirements are met, SSI may only be disclosed after the entry of an SSI protective order.

Plaintiff's counsel was aware of the vetting requirements for SSI prior to Serrano's deposition. Plaintiff's counsel did not engage this process prior to Serrano's deposition; accordingly, plaintiff's counsel was not entitled to receive SSI during Serrano's deposition, nor could Serrano have been required to provide such testimony. Defendant notes that counsel for plaintiff has previously, in unrelated litigation, sought to sidestep litigation-related limitations intended to avoid the dissemination of protected information. *See Corbett v. Trans. Sec. Admin.*, No. 12-15893-RR (11th Cir. Jan. 17, 2014) (denying request to be relieved of obligation to protect information designated as For Official Use Only that had been inadvertently released by the Court and subsequently posted by plaintiff's counsel on his blog), attached hereto as **Exhibit G**. Plaintiff's counsel, to date, still has not engaged the § 525(d) vetting process. As a result, he does not have the required status as a covered person with a need to know SSI, and may not receive SSI under its regulations.

## V.   Defendant Serrano Cannot Be Compelled To Disclose SSI

To the extent that plaintiff's counsel intends to compel Serrano to produce the SSI she did not provide in her deposition testimony, that effort must be denied for two reasons: first, because Serrano is subject to the same restrictions on unauthorized disclosure of SSI as

---

[6] The § 525(d) vetting process is conducted by TSA in coordination with FBI and the Terrorist Screening Center. An applicant for access to SSI must submit to fingerprinting, complete a questionnaire, and pay a nominal fee. TSA conducts a threat assessment based on the results of the FBI's fingerprint-based criminal history records check, as well as a name-based check of the applicant against various terrorist screening databases, and, if necessary, a professional responsibility check. For a list of the information used in the vetting process, see Privacy Impact Assessment for Threat Assessments for Access to Sensitive Security Information in Use in Litigation (Dec. 28, 2006), at http://www.dhs.gov/xlibrary/assets/privacy/privacy_pia_tsa_ssi.pdf. If a litigant or her counsel successfully completes the § 525(d) vetting process and an appropriate SSI protective order is entered by the court, then the party or counsel may have access to certain SSI during the course of discovery.

the government, and second, because discovery into any allegations against her in her individual capacity are premature.

As mentioned above, Serrano, as an employee of TSA, had access to SSI in the course and scope of her employment.  However, she bears the same responsibility to protect against unauthorized disclosure of SSI as the government does.  *See* 49 C.F.R. §§ 1520.7, 9.

Further, Serrano's motion to dismiss is unresolved, and part of what her motion seeks to do is grant Serrano qualified immunity, which would protect her from discovery. *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).  Courts must resolve immunity defenses "at the earliest possible stage in litigation," *Hunter v. Bryant*, 502 U.S. 224, 227 (1991), and "[u]ntil this threshold immunity question is resolved, discovery should not be allowed." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

Any effort to compel Serrano to disclose SSI also defies the Federal Rules.  Federal Rule 26(d)(1) states that "a party may not seek discovery from any source before the parties have conferred as required by Rule 26(f)," a position that sister jurisdictions have adopted in practice.  *See Duran v. City of Porterville*, 2013 WL 12430031, *1 (E.D. Cal. Jan. 17, 2013); *Xcentric Ventures, LLC v. Richeson*, 2010 WL 5276950, *1 (D. Ariz. Dec. 15, 2010). Defendant Serrano's motion to dismiss is still pending, and Serrano and plaintiff have not had their Rule 26(f) conference.

In addition to being premature, any motion to compel Serrano to disclose SSI forces her into an impossible position: enter a discovery dispute in order to defend against the request, contemplate engaging in the unauthorized disclosure of SSI, or possibly both, depending on the nature of the information sought.[7]  Courts faced with similar motions to compel the production of SSI to non-covered persons have been denied.  For example, in *Thomas v. GATX Corp.*, 2020 WL 5633426 (M.D. La. Sept. 21, 2020), plaintiff's motion to compel the production of SSI (in the form of certain videos designated as SSI) was denied.

---

[7] Serrano is a former TSA employee, who no longer has access to print or otherwise recorded SSI.  However, she recalls information designated as SSI from her time as a TSA employee.

Recognizing "the seriousness of any potential disclosure of what may be Sensitive Security Information," the court refused to "order production of same without the appropriate protections in place and procedures followed." *GATX Corp.*, 2020 WL 5633426, at *2. Indeed, the court found the motion to compel the production of the SSI-labelled video "premature unless and until the necessary steps [to gain access] were taken." *Id.*; *see also Chinn v. Blankenship*, 2010 WL 11591399 (W.D. Wash. Feb. 26, 2010).

Although it arose in the context of a motion for an "attorneys' eyes only" protective order rather than a possible motion to compel, the Northern District of California addressed a nearly-identical question in a nearly-identical discovery posture. *See Chowdhury v. Nw. Airlines Corp.*, 226 F.R.D. 608 (N.D. Cal. 2004). There, as here, defendant Northwest Airlines withheld SSI in its discovery responses and in an employee's deposition testimony. The *Chowdhury* court found that the SSI regulations create a valid privilege, even though Chowdhury asserted that he would not be able to prosecute his case without the protected information. "[T]he conclusion that a statute creates an evidentiary privilege does not mean the party seeking the information does not have important reasons for doing so. 'A finding of privilege, however, shields the requested information for disclosure despite the need demonstrated by the litigant.'" *Chowdhury*, 226 F.R.D. at 614 (quoting *Baldridge v. Shapiro*, 455 U.S. 345, 362 (1992)).

. . .
. . .
. . .
. . .
. . .
. . .
. . .
. . .
. . .
. . .

12

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**VI.      Conclusion**

SSI must be protected against unauthorized disclosure to non-covered persons without a need to know.  Plaintiff and her counsel fall into that category.  Accordingly, Defendants request a protective order be entered in this case to protect against the unauthorized disclosure of SSI to plaintiff and/or her counsel unless and until TSA authorizes such disclosure to a covered person with a need to know the SSI currently withheld in this litigation.

Respectfully submitted this 11th day of February, 2021.

NICHOLAS A. TRUTANICH
United States Attorney
District of Nevada


 */s/  Brianna Smith*
BRIANNA SMITH
Assistant United States Attorney