UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| MICHELE LEUTHAUSER, | Case No. 2:20-CV-479 JCM (VCF) |
| Plaintiff(s), | ORDER |
| v. | |
| UNITED STATES OF AMERICA, et al., | |
| Defendant(s). | |

Presently before the court is defendant Anita Serrano's ("Serrano") motion to dismiss. (ECF No. 31). Plaintiff Michele Leuthauser ("Leuthauser") filed a response (ECF No. 39), to which Serrano replied (ECF No. 46).

**I.   BACKGROUND**

The present case stems from an incident that occurred at Las Vegas International Airport. (*See* ECF No. 4). Leuthauser alleges that Serrano, a Transportation Security Administration (TSA) employee, sexually assaulted her during an airport security screening. (*Id*. at 1).

On June 30, 2019, Leuthauser was a passenger for a flight departing from Las Vegas. (*Id*. at 3). When Leuthauser proceeded through a TSA security screening checkpoint, she went through a body scanner, which set off an alarm. (*Id*.). The body scanner operator informed Leuthauser that she needed to submit to a "groin search" and Serrano instructed Leuthauser to accompany her to a private room. (*Id*.).

Leuthauser followed Serrano into a private room where an additional TSA agent was present. (*Id*.). There was a mat in the private room with footprints on it to indicate how a passenger should stand during a pat-down. (*Id*. at 4). Leuthauser stood on the mat as indicated, but Serrano instructed her to widen her stance. (*Id*.). Serrano began the pat-down by sliding her

**James C. Mahan**
**U.S. District Judge**

hands along the inside of plaintiff's thigh and allegedly proceeded to digitally penetrate and inappropriately fondle Leuthauser. (*Id.*). As a result, Leuthauser became severely distressed. (*Id.* at 5). A supervisor arrived and dismissed Serrano and completed the pat-down. (*Id.*). Leuthauser then contacted airport police, but they advised her that TSA was outside of their jurisdiction and did not take action. (*Id.*).

Leuthauser brings a claim of unreasonable search in violation of the Fourth Amendment, and state law claims of battery and intentional infliction of emotional distress ("IIED"). (*Id.* at 6–11). Serrano now moves to dismiss the Fourth Amendment claim for failure to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6).

## II.    LEGAL STANDARD

### a. **Rule 12(b)(6)**

Federal Rule of Civil Procedure 8 requires every complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8. Although Rule 8 does not require detailed factual allegations, it does require more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). In other words, a complaint must have *plausible* factual allegations that cover "all the material elements necessary to sustain recovery under *some* viable legal theory." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007) (citation omitted) (emphasis in original); *see also Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

The Supreme Court in *Iqbal* clarified the two-step approach to evaluate a complaint's legal sufficiency on a Rule 12(b)(6) motion to dismiss. First, the court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in the plaintiff's favor. *Iqbal*, 556 U.S. at 678–79. Legal conclusions are not entitled to this assumption of truth. *Id.* Second, the court must consider whether the well-pleaded factual allegations state a plausible claim for relief. *Id.* at 679. A claim is facially plausible when the court can draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* at 678. When the allegations have not

crossed the line from conceivable to plausible, the complaint must be dismissed. *Twombly*, 550 U.S. at 570; *see also Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

If the court grants a Rule 12(b)(6) motion to dismiss, it should grant leave to amend unless the deficiencies cannot be cured by amendment. *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992). Under Rule 15(a), the court should "freely" give leave to amend "when justice so requires," and absent "undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments . . . undue prejudice to the opposing party . . . futility of the amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962). The court should grant leave to amend "even if no request to amend the pleading was made." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation marks omitted).

b.  *Bivens* **Actions**

The Constitution does not ordinarily provide a private right of action against federal officers for constitutional violations. However, in 1971, the Supreme Court first recognized an "*implied* private action for damages against federal officers alleged to have violated a citizen's constitutional rights." *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001) (emphasis added) (citing *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 391 (1971)). In doing so, the Supreme Court established that "federal courts have the inherent authority to award damages against federal officials to compensate plaintiffs for violations of their constitutional rights." *W. Ctr. For Journalism v. Cederquist*, 235 F.3d 1153, 1156 (9th Cir. 2000) (citations omitted).

In *Bivens*, the Supreme Court recognized that an implied private cause of action arises when law enforcement officials violate a plaintiff's Fourth Amendment right by executing a warrantless search of a plaintiff's home. *Bivens*, 403 U.S. at 391. In the 47 years since *Bivens*, the Supreme Court "ha[s] recognized two more nonstatutory damages remedies, the first for employment discrimination in violation of the Due Process Clause, . . . and the second for an Eighth Amendment violation by prison officials[.]" *Wilkie v. Robbins*, 551 U.S. 537, 549–50 (2007) (internal citations omitted); *see Davis v. Passman*, 442 U.S. 228, 245–48 (1979)

**James C. Mahan**
**U.S. District Judge**

- 3 -

(allowing a *Bivens* claim for a congressional staff member who was wrongfully terminated on the basis of her sex); *see also Carlson v. Green*, 446 U.S. 14, 17–18 (1980) (allowing a *Bivens* claim under the Eight Amendment for a deceased federal prisoner against prison officials for failing to provide proper medical attention).

The Supreme Court has "recently and repeatedly said that a decision to create a private right of action is one better left to legislative judgment in the great majority of cases." *Sosa v. Alvarez-Machain*, 542 U.S. 692, 695 (2004). Thus, the Supreme Court "ha[s] consistently refused to extend *Bivens* liability to any new context or new category of defendants." *Malesko*, 534 U.S. at 68; *see also Iqbal*, 556 U.S. at 675 (holding that the Supreme Court disfavors implied causes of action like *Bivens* and therefore limits their availability).

Nevertheless, courts may extend *Bivens* in rare circumstances in order "to provide an otherwise nonexistent cause of action against individual officers alleged to have acted unconstitutionally, or to provide a cause of action for a plaintiff who lacked any alternative remedy for harms caused by an individual officer's unconstitutional conduct." *Malesko*, 534 U.S. at 70. The decision to recognize a new *Bivens* cause of action is a two-step analysis. First, courts can extend *Bivens* only if there does not exist an alternative remedy. *Mirmehdi v. United States*, 689 F.3d 975, 982 (9th Cir. 2012). Second, if an alternative remedy does not exist, courts must consider whether special factors counsel against creating a new *Bivens* claim. *Id.*

### III. DISCUSSION

#### a. New Bivens Context

The first question the court must answer is whether the facts and allegations presented in this case constitute a new *Bivens* context. The Supreme Court has instructed that a *Bivens* context is new if it is "different in a meaningful way from previous *Bivens* cases." *Ziglar*, 137 S.Ct. at 1859. The *Ziglar* court offered a non-exhaustive list of meaningful differences, including, *inter alia*, "the rank of the officers involved; the constitutional right at issue…[or] the statutory or other legal mandate under which the officer was operating." *Id.* at 1860. The Court further clarified that "even a modest [*Bivens*] extension is still an extension." *Id.* at 1864.

James C. Mahan
U.S. District Judge

Leuthauser argues that her claim is "substantially similar" to *Bivens* since her claim implicates the Fourth Amendment and involves a "one-time incident of misconduct directed solely at the plaintiff." (ECF No. 39 at 7). While true that Leuthauser's claim implicates the same constitutional right as *Bivens*, the alleged unconstitutional search occurred under very different circumstances. In *Bivens*, the search occurred at a private residence as part of traditional law-enforcement during a criminal investigation, and without a warrant. *Bivens*, 409 F.2d 718. Here, the challenged conduct occurred during an administrative search as part of a security checkpoint in a public airport.

Moreover, the federal officials in *Bivens* were operating under a statutory mandate entirely distinct from that of TSA screeners. The TSA's legal mandate comes under the Aviation and Transportation Security Act (*See generally* Pub. L. No. 107-71, 115 Stat. 597 (2001)) with a national security focus, whereas the federal officials in *Bivens* were operating under the former Bureau of Narcotics with a mandate to aid in the detection and prevention of unlawful drug importation (*See* An Act to create in the Treasury Department a Bureau of Narcotics and for other purposes, 71 Cong. Ch. 488, 46 Stat. 585 (1930)). This difference alone renders the context meaningfully different under the Supreme Court's *Ziglar* standard. *Ziglar*, 137 S.Ct. at 1860.

### b. *Bivens* Extensions

The court must next consider whether a *Bivens* extension into this new context is judicially prudent. Leuthauser argues that even if this court does not find her factual scenario to be within the same context as *Bivens* or its two progeny, *Davis* and *Carlson*, a *Bivens* extension is nevertheless proper. She points to two Ninth Circuit cases in which she contends that the court extended *Bivens* into the TSA arena. *Ibrahim v. Department of Homeland Security*, 538 F.3d 1250 (9th Cir. 2008) involved the actions of a TSA employee, but the primary issue in that case was a jurisdictional threshold; the Ninth Circuit did not weigh in on the merits of whether a *Bivens*-like extension was proper for an action against a TSA employee.[1] Furthermore, *Fiore v.*

---

[1] The court did allow a *Bivens* suit to proceed past the motion to dismiss stage, but only based on the appellate court's finding that the federal courts had personal jurisdiction; the court made no ruling on whether a *Bivens* extension was proper in the context presented in the case.

**James C. Mahan**
**U.S. District Judge**

1  *Walden*, 657 F.3d 838 (9th Cir. 2011) did not involve a TSA employee at all; the case involved
2  an allegedly unconstitutional seizure of cash by federal police officers that happened to occur at
3  an airport.[2]

4        By the court's estimation, the question of whether *Bivens* should be extended to Fourth
5  Amendment violations within the context of airport security screening by a TSA employee
6  appears to be an issue of first impression in the Ninth Circuit.

7        Therefore, Leuthauser seeks to bolster her claim by pointing to two purportedly
8  analogous, but non-binding, circuit decisions. *Tobey v. Jones*, 706 F.3d 379 (4th Cir. 2013); *Big*
9  *Cats of Serenity Springs, Inc. v. Rhodes*, 843 F.3d 853 (10th Cir. 2016). Upon closer
10  examination, the two holdings from these cases are unavailing.

11        *Tobey* is inapposite because the Fourth Circuit *affirmed* the district court's dismissal of
12  the *Bivens* Fourth Amendment claim by TSA employees. 706 F.3d 379. The question on appeal
13  was whether the denial of qualified immunity on a First Amendment retaliation claim was
14  proper, not a question of *Bivens* extension.[3] *Id.*

15        In *Big Cats*, the Tenth Circuit did extend a *Bivens* action to the new context of an
16  agriculture inspector engaged in a warrantless search of an animal refuge. 843 F.3d at 864. The
17  court held this after finding the alternative remedy inadequate and that no special factors
18  counseled hesitation since the plaintiff alleged a garden-variety constitutional violation. *Id.*
19  Accordingly, Leuthauser contends that the search in *Big Cats* is analogous the search here—that
20  is, a violative administrative search at an airport security checkpoint. The court disagrees.

21        *Big Cats* was decided pre-*Ziglar* and the garden-variety constitutional violation of a
22  warrantless search of private property in pursuit of a separate and distinct legal mandate is not
23  sufficiently analogous to the facts at hand. Indeed, the Supreme Court made it prominently clear

---

[2] The Ninth Circuit clearly stated in *Fiore*: "We do not, of course, decide in this personal jurisdiction appeal any merits issues, including whether a *Bivens* action is available and whether any immunities apply." *Id.* n.17.

[3] *See also, id.* (Wilkinson, J., dissenting) ("Whether the cause of action asserted by Tobey would lie under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), **is not before us**, and I do not address it.") (emphasis added).

James C. Mahan
U.S. District Judge

- 6 -

in *Ziglar*—decided six months after *Big Cats*—that expanding the *Bivens* remedy is (now) a "disfavored judicial activity." *Ziglar*, 137 S.Ct. at 1857 (internal quotations omitted).

Finally, Leuthauser directs the court's attention to a recent Eastern District of Virginia decision where a traveler was prevented by TSA employees from filming a pat-down procedure of his spouse with his phone camera. *Dyer v. Smith, et al.*, No. 3:19-cv-921 (E.D. Va. Feb. 23, 2021). The court held, as we do here, that the extension of a *Bivens* action for a Fourth Amendment violation claim against TSA employees is, in fact, a new *Bivens* context. *Id.* at 6. The court found, however, that the alternative remedy available in the Travelers Redress Inquiry Program (TRIP), pursuant to 49 U.S.C. § 44926, was not satisfactory and therefore justified a *Bivens* extension. *Id.* at 9.[4] The court further held that special factors such as national security, practicality, or absence of a statutory damages remedy did not counsel against the extension of *Bivens* into this new arena. *Id.* at 6–9.[5]

The court is more persuaded by two other recent district court opinions, whose facts are more akin to the ones here.

In *Mengert v. U.S. Transportation Security Administration*, 2020 WL 7029893 (N.D. Okla. Nov. 30, 2020), a passenger flying home to Las Vegas from Tulsa, Oklahoma went through a body scanner and was required to submit to additional pat-down screening. Following the pat-down, she was further instructed to enter a private room nearby with TSA agents because the agents detected an object near her genital area. *Id.* at 1. The passenger complied and was instructed to take her pants and underwear down to her knees and remove the item so they could inspect it. *Id.* She objected, but eventually complied. *Id.* She was released once TSA determined she was not carrying contraband. *Id.*

The court refused to extend *Bivens* damages into this new context because special factors counseled hesitation. *Id.* at 9. Specifically, the court found that since TSA employees are tasked with assisting in critical national security measures, it would be inappropriate and "highly

---

[4] The court's concern was that TRIP provided relief only for passengers wrongly identified as a "threat," which was not the case in *Dyer*. *Id.* at 9.

[5] The court did not, however, elect to extend *Bivens* to the plaintiff's First Amendment claim in *Dyer*. *Id.* at 10.

James C. Mahan
U.S. District Judge

- 7 -

disruptive" to interject a judicially created remedy since hundreds of millions of passengers pass through TSA screening checkpoints every year, each potentially implicating similar invasions of privacy.[6] *Id.* The court reasoned:

> Whether a particular invasion violates the Fourth Amendment will necessarily be a question of degree. Clearly, the potential for personal liability would discourage overreach by TSA screeners, but it also risks chilling their willingness to engage in thorny—but constitutionally valid—exercises of their authority, thereby putting the public at risk.

*Id.*

*Osmon v. The United States of America and TSO Robinson*, No. 1:20-cv-31-MR-WCM (W.D. N.C. Mar. 29, 2021) is even more similar on the facts here. In *Osmon*, the plaintiff was traveling by plane to Los Angeles, California, from Asheville, North Carolina, and was also directed to a body scanner by TSA agents for a security screening. *Id.* at 2. The body scanner alarm alerted the TSA agents that plaintiff would need to submit to a groin search. *Id.* Plaintiff similarly alleged that she was instructed to spread her legs wider than the illustrated footprint markings on the ground and that the TSA agent made direct contact with plaintiff's genitals after sliding a hand up along the inside of plaintiff's legs. *Id.* at 3.

Plaintiff alleged in *Osmon*—as Leuthauser alleges here—that the TSA agent's conduct was intended to "humiliate" and "dominate" the plaintiff. *Id.*; (ECF No. 4 at 4). The court declined to extend *Bivens* to this context because of the availability of alternative remedial processes[7] and special factors counseling hesitation for judicial intervention. *Osmon*, No. 1:20-cv-31-MR-WCM at 25. The court reasoned that TSA screening checkpoints are "uniquely sensitive areas" and that extending a damages remedy in this context could have a "potential chilling effect" on TSA employees' due diligence in detecting security threats at airports, resulting in potentially catastrophic consequences. *Id.*

. . .

---

[6] *TSA Year in Review: A Record Setting 2018*, (Feb. 7, 2019), http://www.tsa.gov/blog/2019/02/07/tsa-year-review-record-setting-2018 (noting that nearly 814 million passengers and flight crew passed through TSA checkpoints in 2018).

[7] Specifically, the Department of Homeland Security's civil rights complaint process pursuant to 6 U.S.C. § 345(a)(1) and review of TSA's standard operating procedures by the U.S. Court of Appeals pursuant to 49 U.S.C. § 46110.

James C. Mahan
U.S. District Judge

### c. **The facts here do not justify a *Bivens* extension**

First, unlike in *Dyer*, an alternative remedy exists here. Congress directed the Department of Homeland Security—the parent agency for the TSA—to establish a civil rights complaint process pursuant to 6 U.S.C. § 345(a).[8] The mere presence of this congressionally directed remedy militates against an extension of *Bivens*. This is because "Congress is in a far better position than a court to evaluate the impact of a new species of litigation against those who act on the public's behalf." *Wilkie*, 551 U.S. at 562 (internal citations omitted). This is also true even if the alternative remedy provides less complete relief than a *Bivens* damages claims. *Bush v. Lucas*, 462 U.S. 367, 388 (1983) (refusing to create a *Bivens* action for an employee unfairly disciplined for exercising his First Amendment right in criticizing his agency employer, even though the congressionally created administrative system of remedies did not provide *complete* relief for the employee).

Leuthauser argues that this alternative remedy is not sufficient—and thus judicial intervention is necessary—because TSA is not "even authorized, let alone duty-bound, to provide any kind of remedy to one in the situation of [Leuthauser]." (ECF No. 39 at 8). Serrano argues that Leuthauser mistakenly believes that a *Bivens* extension is justified simply because there is no *assurance* of a remedy, as opposed to *availability* of a remedy. (ECF No. 46 at 6).

While Leuthauser laments the insufficiency of the congressionally directed remedy, the court cannot ignore that Congress has in fact circumscribed remedies in the airport security context. *See Ziglar*, 137 S.Ct. at 1862 ("Congress' failure to provide a damages remedy might be more than mere oversight, and that congressional silence might be more than inadvertent."). The court joins the Third Circuit in hesitating to "create new remedies when it appears that the

---

[8] The Officer for Civil Rights and Civil Liberties, who reports directly to the relevant secretary (Secretary of Homeland Security here), shall "investigate complaints and information indicating possible abuses of civil rights or civil liberties, unless the Inspector General of the Department determines that any such complaint or information should be investigated by the Inspector General." 6 U.S.C. § 345 (a)(6). According to Serrano, the Department of Homeland Security's Office of Inspector General did, in fact, conduct an investigation into Leuthauser's allegations. (ECF No. 46 at n.7). Serrano does not indicate the conclusions of that investigation in her motion or briefing.

available ones are limited by congressional design." *Vanderklok v. United States,* 868 F.3d 189, 208 (3d Cir. 2017).

Even assuming, *arguendo,* that no alternate remedy exists for Leuthauser, significant special factors counsel against the creation of a judicial damages remedy in the context of TSA security screening. The court finds the reasoning in *Mengert* and *Osmon* both applicable and persuasive here. *Supra* Part III.B.

Courts should indeed exercise caution before intruding on national security matters—an area typically reserved for the legislative and executive branches. Allowing a potential *Bivens* damages claim for the hundreds of millions of passengers screened during airport security each year runs the risk of inviting an "onslaught of *Bivens* actions," *Wilkie*, 551 U.S. at 562, thereby implicating national security. The encumbrance of such liability for TSA screeners would likely inject hesitance and second-guessing during screening procedures, leading to potentially disastrous lapses in security. This potential impact on national security surely counsels hesitation; and this hesitation is especially justified when considering the alternative remedy available through the TSA civil rights complaint process.

Leuthauser contends that "[g]arden-variety TSA checkpoint screening does not have 'national security implications' more than activities of other agencies where courts have no hesitation applying *Bivens*." (ECF No. 39 at 10). In reply, Serrano asserts that special factors need not conclusively demonstrate that extending *Bivens* is unwise, but rather simply counsel hesitation about "whether the [j]udiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Ziglar,* 137 S. Ct. at 1857-58. The court agrees with Serrano. The special factor of national security implications, combined with the presence of congressional action in this sphere, counsels hesitation, even if the anticipated outcomes are not *conclusively* demonstrated.[9]

---

[9] The court notes that TSA was created in response to the terrorist attacks of September 11, 2001, specifically for the purpose of securing our nation's airports and air traffic. *Transp. Workers Union of Am., AFL-CIO v. Transp. Sec. Admin.*, 492 F.3d 471, 473 (D.C. Cir. 2007) (citing Pub L. No. 107-71, 115 Stat. 597 (2001) (codified in part at 49 U.S.C. § 44936 et seq.)).

**James C. Mahan**
**U.S. District Judge**

- 10 -

Finally, Leuthuaser argues that if the court forecloses her Bivens claim against Serrano, she will have no judicial recourse for the alleged constitutional violation. Leuthauser explains this is so because this court previously held that TSA screeners[10] are exempt from intentional tort liability under the Federal Tort Claims Act (FTCA).[11] 28 U.S.C. §§ 1346(b), and 2680(h). While true, this has no bearing on the court's determination of whether to extend *Bivens* here. As the court has explained in detail, even accepting as true all of Leuthauser's well-pleaded factual allegations and drawing all reasonable inferences in her favor, both the availability of an alternative remedy (separate from the FTCA) and special factors counsel hesitation in expanding *Bivens* to these facts. *Iqbal*, 556 U.S. at 678–79.

Further, since the court does not find it proper to extend a *Bivens* damages action to this context, the court need not address the qualified immunity question.

Accordingly, Serrano's motion to dismiss Leuthauser's Fourth Amendment claim against her (ECF No. 31) is GRANTED, with prejudice, since no additional facts would alter the court's rejection of a *Bivens* extension into the space of airport security screening.

. . .

. . .

. . .

. . .

. . .

---

[10] The court does not decide on this motion to dismiss whether Serrano was in fact a TSA "screener" as opposed to an "investigative or law enforcement" officer—the latter designation *not* being exempt from intentional tort liability under the FTCA (*See* 28 U.S.C. § 2680(h)). As stated in its previous order, ECF No. 17, this determination is a "fact intensive inquiry" and inappropriate at this stage of the proceedings.

[11] And although the FTCA precludes an action against a TSA screener like Serrano (if she is deemed as such, *see supra* n. 10), nothing prevented Leuthauser from availing herself of the FTCA administrative claim process which was "established to encourage administrative settlement of claims against the United States and thereby to prevent an unnecessary burdening of the courts." *Brady v. United States,* 211 F.3d 499, 503 (9th Cir. 2000). Indeed, Congress authorized the heads of federal agencies to "consider, ascertain, adjust, determine, compromise, and settle any claim for money damages against the United States" for personal injury caused by the negligent or wrongful act of any employee of an agency who was acting within the scope of his/her employment. 28 U.S.C. § 2672. **Under this statutory regime, the agency can settle with claimants for money damages up to $25,000, or higher if approved by the Attorney General**. *Id.*

IV.     **CONCLUSION**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that Serrano's motion to dismiss (ECF No. 31) be, and the same hereby is, GRANTED, with prejudice.

DATED December 21, 2021.

_____
UNITED STATES DISTRICT JUDGE

**James C. Mahan**
**U.S. District Judge**