**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| MICHELE LEUTHAUSER, | No. 22-15402 |
| *Plaintiff-Appellant,* | D.C. No. 2:20-cv-00479-JCM-VCF |
| v. | |
| UNITED STATES OF AMERICA; ANITA SERRANO, | OPINION |
| *Defendants-Appellees.* | |

Appeal from the United States District Court
for the District of Nevada
James C. Mahan, District Judge, Presiding

Argued and Submitted December 6, 2022
San Francisco, California

Filed June 26, 2023

Before: Jacqueline H. Nguyen and Lucy H. Koh, Circuit
Judges, and Joseph F. Bataillon,[*] District Judge.

Opinion by Judge Nguyen

---

[*] The Honorable Joseph F. Bataillon, United States District Judge for the District of Nebraska, sitting by designation.

# SUMMARY[**]

### Federal Tort Claims Act

The panel reversed the district court's summary judgment in favor of the United States in a Federal Tort Claims Act ("FTCA") action brought by Michele Leuthauser, alleging that a Transportation Security Officer ("TSO") sexually assaulted her during an airport security screening.

Plaintiff alleged claims for battery and intentional infliction of emotional distress.

The panel held that TSOs fall under the FTCA's "law enforcement proviso," which waives sovereign immunity for torts such as assault and battery committed by "investigative or law enforcement officers of the United States Government." 28 U.S.C. § 2680(h). The panel joined the Third, Fourth, and Eighth Circuits in holding that the FTCA's limited waiver of sovereign immunity applies to certain intentional torts committed by TSOs. The district court therefore had subject matter jurisdiction over plaintiff's FTCA claims.

First, the panel addressed whether a TSO fits the statutory definition of "any officer of the United States." 28 U.S.C. § 2680(h). The panel held that a TSO easily satisfies dictionary definitions of *officer* at the time of the proviso's enactment in 1974. That TSOs are titled, uniformed, and badged as "officers" reinforces the conclusion that they are

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

"officers of the United States" as understood in ordinary parlance. The panel rejected the government's contention that the proviso is limited to officers with traditional police powers. While the TSA Administrator did not designate TSO Anita Serrano as a "law enforcement officer" under the Aviation Security Act, this did not preclude her from qualifying as an "officer of the United States" under the FTCA. The panel also rejected the government's contention that TSOs are not officers partly because the Airport Transportation Security Act refers to them as "employees," where the Act defines employees to include officers.

Next, the panel considered whether, as officers of the United States, TSOs are "empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law." 28 U.S.C. § 2680(h). The government argued that TSOs do not "execute searches" by conducting screenings. The panel held that the screenings fit the ordinary, contemporary, and common meaning of searches. Further, given the intrusion involved in TSA screenings, caselaw explicitly recognizes them as searches under the Fourth Amendment. Having established that TSOs *execute searches*, the panel turned to whether they do so *for violations of Federal law*. The panel held that TSOs are empowered by law to execute searches for violations of Federal law based on the statutory test's plain meaning, as supported by caselaw and the TSA's statutory and regulatory framework. The panel rejected the government's contention that the proviso applies only to searches executed for criminal investigations.

## COUNSEL

Jonathan Corbett (argued), Corbett Rights PC, Los Angeles, California, for Plaintiff-Appellant.

Patrick M. Jaicomo (argued), Anna Bidwell, and Jaba Tsitsuashvili, Institute for Justice, Arlington, Virginia, for Amicus Curiae Institute for Justice.

Daniel Aguilar (argued) and Sharon Swingle, Appellate Staff Attorneys; Jason M. Frierson, United States Attorney; Brian M. Boynton, Principal Deputy Assistant Attorney General; United States Department of Justice; Washington, D.C.; Brianna Smith, Pisanelli Bice PLLC, Las Vegas; for Defendants-Appellees.

Mahesha P. Subbaraman, Subbaraman PLLC, Minneapolis, Minnesota, for Amici Curiae Freedom to Travel USA and Restore the Fourth Inc.

# OPINION

NGUYEN, Circuit Judge:

Michele Leuthauser alleges that a Transportation Security Officer ("TSO") sexually assaulted her during an airport security screening.  We must decide whether Leuthauser may bring claims for battery and intentional infliction of emotional distress against the United States under the Federal Tort Claims Act ("FTCA").  She may do so only if TSOs fall under the FTCA's "law enforcement proviso," which waives sovereign immunity for torts such as assault and battery committed by "investigative or law enforcement officers of the United States Government."  28 U.S.C. § 2680(h).

Every circuit that has addressed this issue in a published decision has held that TSOs are *investigative or law enforcement officers* under the FTCA's plain language.  *See Pellegrino v. U.S. Transp. Sec. Admin.*, 937 F.3d 164, 180 (3d Cir. 2019) (en banc); *Iverson v. United States*, 973 F.3d 843, 854–55 (8th Cir. 2020); *Osmon v. United States*, 66 F.4th 144, 150 (4th Cir. 2023).  These rulings rest on the statute's definition of *investigative or law enforcement officer* as "any officer of the United States who is empowered by law to execute searches . . . for violations of Federal law."  28 U.S.C. § 2680(h); *Pellegrino*, 937 F.3d at 180; *Iverson*, 973 F.3d at 853; *Osmon*, 66 F.4th at 148–50.  The only circuit to reach the opposite conclusion, the Eleventh Circuit, did so in an unpublished, per curiam opinion that is not binding in that circuit, *see* 11th Cir. R. 36-2.  *See Corbett v. Transp. Sec. Admin.*, 568 F. App'x 690, 701 (11th Cir. 2014) (per curiam).

Today we join the Third, Fourth, and Eighth Circuits in holding that the FTCA's limited waiver of sovereign immunity applies to certain intentional torts committed by TSOs. The district court therefore had subject matter jurisdiction over Leuthauser's FTCA claims. We reverse its grant of summary judgment in favor of the government and remand for further proceedings.

**I**

On June 30, 2019, Leuthauser was a ticketed passenger at the Harry Reid International Airport (formerly, Las Vegas-McCarran International Airport) passing through a security checkpoint run by the Transportation Security Administration ("TSA"). After stepping into a body scanner, Leuthauser was told that she had to submit to a "groin search." Leuthauser then entered a private room with two TSOs, including Defendant Anita Serrano. Leuthauser was directed to stand on a floor mat with footprints painted on it to show where to place her feet. Leuthauser alleges that TSO Serrano directed her to spread her legs far more widely than the footprints indicated. TSO Serrano then conducted a pat-down during which TSO Serrano slid her hands along the inside of Leuthauser's thighs, touched her vulva and clitoris with the front of her fingers, and digitally penetrated her vagina. She asserts that she suffered symptoms of emotional distress, including shortness of breath, uncontrollable shaking, and nausea.

A TSA supervisor dismissed TSO Serrano and completed the pat-down search. Leuthauser maintains that no prohibited items were found in her possession. She contacted the airport police before she left the checkpoint area, but the airport police told her it could not take her report because the TSA was outside of its jurisdiction.

Leuthauser alleges that, under TSA policy, a pat-down resulting from a body scanner alarm must occur in the public area unless the passenger requests otherwise. It is undisputed that TSA policy prohibits body cavity searches.

Leuthauser filed suit against TSO Serrano, in her individual capacity, and the United States. As to TSO Serrano, Leuthauser raised a Fourth Amendment claim under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971). The district court granted TSO Serrano's motion to dismiss the claim on the ground that a *Bivens* damages action is not available in this context. *Leuthauser v. United States*, 576 F. Supp. 3d 806, 815 (D. Nev. 2021). Whether Leuthauser can state a claim against TSO Serrano under *Bivens* is not at issue in this appeal.

As to the United States, Leuthauser brought claims for battery and intentional infliction of emotional distress under the FTCA and Nevada state law. *Leuthauser v. United States*, No. 2:20-CV-479, 2020 WL 4677296, at *2 (D. Nev. Aug. 12, 2020). The government moved to dismiss. The district court found that TSOs who are not formally designated as "law enforcement officer[s]" by the TSA Administrator, *see* 49 U.S.C. § 114(p)(1), do not fall within the law enforcement proviso because they conduct administrative screenings rather than criminal investigative searches, are not permitted to seize evidence, and do not have the authority to make arrests. The district court denied the government's motion to dismiss, holding that discovery was necessary to determine whether TSO Serrano was designated as a law enforcement officer under 49 U.S.C. § 114(p)(1). *Id.* at *4. The district court denied Leuthauser's motion for reconsideration.

Leuthauser conceded that the TSA Administrator had not designated TSO Serrano as a law enforcement officer. The government then moved for summary judgment, which the district court granted on the ground that TSOs are not "investigative or law enforcement officers" under the FTCA. Leuthauser timely appealed.

**II**

The district court had jurisdiction under 28 U.S.C. §§ 1346(b) and 1331, and we have jurisdiction per 28 U.S.C. § 1291. We review *de novo* an order dismissing an FTCA suit for lack of subject matter jurisdiction. *Foster v. United States*, 522 F.3d 1071, 1074 (9th Cir. 2008).

**III**

The FTCA waives sovereign immunity and grants federal district courts exclusive jurisdiction over claims against the United States for "personal injury or death caused by the negligent or wrongful act or omission of a federal employee 'acting within the scope of his office or employment.'" *Millbrook v. United States*, 569 U.S. 50, 52 (2013) (internal quotation marks omitted) (quoting 28 U.S.C. § 1346(b)(1)). The statute's waiver of sovereign immunity, however, is subject to an exception for certain intentional torts over which the government reclaims immunity. 28 U.S.C. § 2680(h).

The FTCA then contains an exception to this exception—a re-waiver of sovereign immunity. *See Foster*, 522 F.3d at 1079. This so-called "law enforcement proviso" allows suits against the United States for "any claim arising . . . out of assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution" by "investigative or law enforcement officers of the United

States Government." 28 U.S.C. § 2680(h). The statute defines an *investigative or law enforcement officer* as "any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law." *Id.* The question that we must decide is whether TSOs qualify under this definition.

**A**

We first address whether a TSO fits the statutory definition of "any officer of the United States." 28 U.S.C. § 2680(h).

**1**

We begin with the plain text of the statute. *City of Los Angeles v. Barr*, 941 F.3d 931, 940 (9th Cir. 2019). Because the proviso does not specifically define "officer," we interpret this term "consistent with [its] ordinary meaning . . . at the time Congress enacted the statute." *Wis. Cent. Ltd. v. United States*, 138 S. Ct. 2067, 2070 (2018) (cleaned up). At the same time, we are mindful that "[t]he definition[s] of words in isolation . . . [are] not necessarily controlling in statutory construction." *Dolan v. U.S. Postal Serv.*, 546 U.S. 481, 486 (2006) (interpreting another provision of 28 U.S.C. § 2680). We note that the use of the term *any* before *officer* counsels toward defining the latter broadly. *See United States v. Gonzales*, 520 U.S. 1, 5 (1997).

A TSO easily satisfies dictionary definitions of *officer* at the time of the proviso's enactment in 1974. *See, e.g.*, *Officer*, Webster's Third New International Dictionary (1971) (defining *officer* as "one charged with a duty" and "one who is appointed or elected to serve in a position of trust, authority, or command esp. as specif. provided for by law"); *Officer*, Black's Law Dictionary (4th ed. rev. 1968)

(defining *officer* as "[o]ne who is charged by a superior power (and particularly by government) with the power and duty of exercising certain functions" or "[o]ne who is invested with some portion of the functions of the government to be exercised for the public benefit"); *accord Pellegrino*, 937 F.3d at 170; *Iverson*, 973 F.3d at 848.

And while not dispositive, the government represents TSOs to the public as officers by their title and uniforms, which include badges displaying the title "US Officer."[1] That screeners are titled, uniformed, and badged as "officers" reinforces our conclusion that they are "officers of the United States" as understood in ordinary parlance. Therefore, based on its ordinary meaning, the proviso's reference to *any officer of the United States* includes TSOs.

**2**

Resisting the ordinary meaning of *any officer*, the government contends that the proviso is limited to officers with traditional police powers. As support, it highlights the difference in language between subsections (a) and (e) of 28

---

[1] The TSA adopted the "officer" title in 2005 and added the uniforms and "officer" badges in 2008. *See* Press Release, Transp. Sec. Admin., *Transportation Security Officers Have Renewed Focus and New Look on Seventh Anniversary of 9/11* (Sept. 11, 2008), https://www.tsa.gov/news/releases/2008/09/11/transportation-security-officers-have-renewed-focus-and-new-look-seventh [https://perma.cc/YB5A-4XCH]. In 2011, Congress rejected a bill that would have stripped TSOs of their officer title and badge. *See* Stop TSA's Reach in Policy Act, H.R. 3608, 112th Cong. (2011), https://www.congress.gov/bill/112th-congress/house-bill/3608/text.

U.S.C. § 2680,[2] which address sovereign immunity for conduct by an "employee," and the proviso, which is limited to an "officer," 28 U.S.C. § 2680(h). The government argues that, if Congress intended the proviso to sweep broadly, it would have defined *investigative or law enforcement officer* as "any employee," rather than "any officer," empowered to execute searches. But there is a straightforward textual explanation for this difference: subsections (a) and (e) simply cover more federal employees, including those who are not officers.

Additionally, the government points to unrelated statutes to suggest that Congress's use of the term "investigative or law enforcement officer" generally describes officers authorized to perform traditional criminal law enforcement functions. *See* Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 2510(7) (defining "[i]nvestigative or law enforcement officer" as an officer "empowered by law to conduct investigations of or to make arrests for [certain] offenses . . . and any attorney authorized by law to prosecute or participate in the prosecution of such offenses"); Foreign Intelligence Surveillance Act ("FISA"), 50 U.S.C. § 1809(b) (prohibiting electronic surveillance under color of law, but providing a defense to "a law enforcement or investigative officer engaged in the course of his official duties"

---

[2] Under subsection (a), the government reclaims immunity for "[a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation . . . or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government." 28 U.S.C. § 2680(a). Subsection (e) similarly reclaims immunity for "any employee of the Government" administering various provisions of Title 50, which relates to war and national defense. 28 U.S.C. § 2680(e).

conducting electronic surveillance per a search warrant or court order). But those statutory definitions apply to factual contexts not relevant here. As the Third Circuit explained, "it is unnecessary to explore the entire U.S. Code . . . because Congress provided an expressly local definition in the proviso" that "overrides any other usages of 'law enforcement officer.'" *Pellegrino*, 937 F.3d at 178; *see Van Buren v. United States*, 141 S. Ct. 1648, 1657 (2021). Congress could have limited *investigative or law enforcement officer* to the criminal context, as it did explicitly in the ECPA and FISA, but it excluded such limiting language from the proviso.**3** Thus, the government has not met the high bar to "justify . . . departing from the plain meaning" of the proviso. *Bouie v. City of Columbia*, 378 U.S. 347, 362–63 (1964) (quoting *United States v. Wiltberger*, 18 U.S. (5 Wheat.) 76, 96 (1820) (Marshall, C.J.)).

Moreover, while it is uncontested that the TSA Administrator did not designate TSO Serrano as a "law enforcement officer" under the Aviation Security Act, *see* 49 U.S.C. § 114(p)(1), this does not preclude her from qualifying as an "officer of the United States" under the FTCA. A designee under 49 U.S.C. § 114(p), like a Federal

---

[3] The government also appears to suggest that TSOs cannot be "investigative or law enforcement officers" because they are not trained on the constitutional underpinnings of the torts listed in the proviso. To the extent the government makes this argument, we reject it. Congress knows how to define "law enforcement officers" by reference to training. *See, e.g.*, 12 U.S.C. § 248(q)(4) ("[T]he term 'law enforcement officers' means personnel who have successfully completed law enforcement training . . . ."). It did not do so here, where the proviso defines "investigative or law enforcement officer" by the legal authority to "execute searches." *See* Sec. III.B.1.

Air Marshal or a TSA criminal investigator, has statutory authority to "carry a firearm," "make an arrest" for federal criminal offenses, and "seek and execute warrants for arrest or seizure of evidence . . . upon probable cause that a violation has been committed." 49 U.S.C. § 114(p)(2). However, "there is no textual indication that only a specialized 'law enforcement officer' in the Aviation Security Act, 49 U.S.C. § 114(p), qualifies as an 'officer of the United States' under the proviso in the [FTCA]." *Pellegrino*, 937 F.3d at 171. The defined term is "investigative *or* law enforcement officer," indicating that there are some "investigative . . . officers," including TSOs, who are not traditional "law enforcement officers." 28 U.S.C. § 2680(h) (emphasis added). Disregarding the proviso's reference to "investigative" officers would "violate[ ] the settled rule that a statute must, if possible, be construed in such fashion that every word has some operative effect." *United States v. Nordic Vill. Inc.*, 503 U.S. 30, 36 (1992).

Finally, the government cites to the *Pellegrino* dissent, which argues that TSOs are not officers partly because the Airport Transportation Security Act ("ATSA") refers to them as "employees." *See Pellegrino*, 937 F.3d at 191–92 (Krause, J., dissenting). Assuming the government has not forfeited this argument, we are unpersuaded. While the ATSA directs that "screening . . . be carried out by a Federal Government employee," 49 U.S.C. § 44901(a), it also defines *employees* in the ATSA to include *officers*. *See* 49 U.S.C. § 44901(a) (cross referencing 5 U.S.C. § 2105 (defining *employee* as "an officer and an individual")); *see also* 49 U.S.C. § 44922(e) (providing that "[a] State or local law enforcement *officer* who is deputized" into federal service by the TSA Administrator "shall be treated as an

14 LEUTHAUSER V. UNITED STATES

'*employee* of the Government'" for purposes of the proviso (emphases added)). Further, the passage of the ATSA in 2001 cannot "silently alter" the ordinary meaning of "officers" in the FTCA, passed nearly three decades earlier. *See Bilski v. Kappos*, 561 U.S. 593, 607 (2010) ("[The statute's] definition . . . cannot change the meaning of a prior-enacted statute."); *see also Iverson*, 973 F.3d at 850 (concluding that "there is no reason to assume that Congress attached the same meanings to *employee* and *officer*" in the ATSA and FTCA because they concern different subjects).

We therefore hold that the law enforcement proviso's use of the phrase *any officer of the United States* unambiguously includes TSOs.

## B

Next, we consider whether, as officers of the United States, TSOs are "empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law." 28 U.S.C. § 2680(h).

### 1

"As a general rule, the use of a disjunctive in a statute indicates alternatives and requires that they be treated separately." *Azure v. Morton*, 514 F.2d 897, 900 (9th Cir. 1975). Because the context does not "dictate[ ] otherwise," *United States v. Nishiie*, 996 F.3d 1013, 1023 (9th Cir. 2021), *cert. denied*, 142 S. Ct. 2653 (2022), TSOs need only be *empowered by law* to perform one of the three listed functions. Here, Leuthauser argues that they *execute searches . . . for violations of Federal law*.

Congress has granted TSA the authority to "screen[ ] . . . all passengers and property . . . that will be carried aboard a passenger aircraft." 49 U.S.C. § 44901(a). The government

'*employee* of the Government'" for purposes of the proviso (emphases added)). Further, the passage of the ATSA in 2001 cannot "silently alter" the ordinary meaning of "officers" in the FTCA, passed nearly three decades earlier. *See Bilski v. Kappos*, 561 U.S. 593, 607 (2010) ("[The statute's] definition . . . cannot change the meaning of a prior-enacted statute."); *see also Iverson*, 973 F.3d at 850 (concluding that "there is no reason to assume that Congress attached the same meanings to *employee* and *officer*" in the ATSA and FTCA because they concern different subjects).

We therefore hold that the law enforcement proviso's use of the phrase *any officer of the United States* unambiguously includes TSOs.

## B

Next, we consider whether, as officers of the United States, TSOs are "empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law." 28 U.S.C. § 2680(h).

### 1

"As a general rule, the use of a disjunctive in a statute indicates alternatives and requires that they be treated separately." *Azure v. Morton*, 514 F.2d 897, 900 (9th Cir. 1975). Because the context does not "dictate[ ] otherwise," *United States v. Nishiie*, 996 F.3d 1013, 1023 (9th Cir. 2021), *cert. denied*, 142 S. Ct. 2653 (2022), TSOs need only be *empowered by law* to perform one of the three listed functions. Here, Leuthauser argues that they *execute searches . . . for violations of Federal law*.

Congress has granted TSA the authority to "screen[ ] . . . all passengers and property . . . that will be carried aboard a passenger aircraft." 49 U.S.C. § 44901(a). The government

does not contest that TSOs are *empowered by law* to conduct screenings. Instead, it argues only that TSOs do not *execute searches* by conducting such screenings.

We first consider the "ordinary, contemporary, common meaning" of *searches*. *Transwestern Pipeline Co. v. 17.19 Acres of Prop. Located in Maricopa Cnty.*, 627 F.3d 1268, 1270 (9th Cir. 2010) (quoting *Perrin v. United States*, 444 U.S. 37, 42 (1979)). Any ordinary airport passenger would attest that her person and property are subject to search. As the TSA's Assistant Federal Security Director for Screening attests in his declaration filed below, TSOs conduct "pat down search[es]" of passengers intended "to ensure that there are no prohibited items concealed on the passenger in the area being searched." As our sister circuits observe, dictionary definitions of "search" at the time of the FTCA's enactment reflect this common meaning. *See Pellegrino*, 937 F.3d at 172–73 (citing *Search*, Webster's Third New International Dictionary (1971) ("to examine (a person) thoroughly to check on whatever articles are carried or concealed."); *Search*, Black's Law Dictionary (4th ed. rev. 1968) ("an examination or inspection . . . with [a] view to discovery of stolen, contraband, or illicit property")); *Iverson*, 973 at 851.

The Aviation Security Act's statutory and regulatory regime also comports with this ordinary usage. At least in the context of cargo, "screening" is defined in part as a "physical examination," including a "physical search." 49 U.S.C. § 44901(g)(4). Additionally, federal regulations require an "aircraft operator" to "refuse to transport" any person "who does not consent to a search or inspection of his or her person" by TSOs. 49 C.F.R. § 1544.201(c)(1); *see also id.* § 1540.107(a) ("No individual may enter a sterile area or board an aircraft without submitting to the screening

and inspection of his or her person and accessible property in accordance with the procedures being applied to control access to that area or aircraft under this subchapter.").

Further, given the intrusion involved in TSA screenings, our caselaw explicitly recognizes them as searches under the Fourth Amendment. *See United States v. Aukai*, 497 F.3d 955, 960 (9th Cir. 2007) (en banc) ("[A]irport screening searches . . . are constitutionally reasonable administrative searches because they are conducted as part of a general regulatory scheme . . . to prevent the carrying of weapons or explosives aboard aircraft, and thereby to prevent hijackings." (cleaned up)); *see also Terry v. Ohio*, 392 U.S. 1, 16 (1968) (describing it as "nothing less than sheer torture of the English language to suggest that a careful exploration of the outer surfaces of a person's clothing all over his or her body in an attempt to find weapons is not a 'search'"). TSA screenings need not be consensual to be constitutionally valid. *Aukai*, 497 F.3d at 961; *cf. Wilson v. United States*, 959 F.2d 12, 15 (2d Cir. 1992) (holding that parole officers "lack the seizure power contemplated by" the proviso because they can only seize contraband in plain view with parolees' consent).

Having established that TSOs *execute searches*, we then turn to whether they do so *for violations of Federal law*. This modifier follows the third, disjunctive alternative in the definition's list— "to execute searches, to seize evidence, or to *make arrests for violations of Federal law*." 28 U.S.C. § 2680(h) (emphasis added). We are skeptical that *for violations of Federal law* also modifies *to execute searches*, which would appear to violate "the basic intuition that when a modifier appears at the end of a list, it is easier to apply that modifier only to the item directly before it." *Lockhart v. United States*, 577 U.S. 347, 351 (2016);

*accord Facebook, Inc. v. Duguid*, 141 S. Ct. 1163, 1170 (2021) ("[A] limiting clause or phrase . . . should ordinarily be read as modifying only the noun or phrase that it immediately follows." (citation omitted)); *see Nishiie*, 996 F.3d at 1023 (explaining that use of the disjunctive form limits the "backward reach" of a subsequent phrase). Nevertheless, we need not decide whether the phrase modifies only the last item in the list or all of them.

Even if TSOs were required to execute searches *for violations of Federal law*, they indisputably do so. In *Aukai*, we recognized that TSA screening searches are constitutionally reasonable under the Fourth Amendment "because they are 'conducted as part of a general regulatory scheme in furtherance of an administrative purpose, namely, to prevent the carrying of weapons or explosives aboard aircraft, and thereby to prevent hijackings.'" 497 F.3d at 960 (quoting *United States v. Davis*, 482 F.2d 893, 908 (9th Cir. 1973)). It would "violat[e] . . . Federal law" to carry such weapons or explosives on board an aircraft, *see* 49 U.S.C. § 46505, just as it would to bring on board other "hazardous materials" for which TSOs execute searches, *see, e.g.*, 49 C.F.R. §§ 172.101, 175.10(a). That some airport contraband may be legal in some non-flight contexts—such as aerosol insecticides in campgrounds or legal firearms in Nevada—does not change the fact that federal law prohibits passengers from carrying them onto aircraft.

Accordingly, we hold that TSOs are *empowered by law to execute searches . . . for violations of Federal law* based on the statutory text's plain meaning, as supported by our caselaw and the TSA's statutory and regulatory framework.

**2**

Rather than apply the ordinary meaning of *execute searches*, the government would have us limit the proviso to "criminal, investigatory search," as distinct from an administrative search like the screenings conducted by TSOs.  But nowhere within the proviso does the word "criminal" appear, let alone to modify "searches." *See* 28 U.S.C. § 2680(h).  The Supreme Court instructs us not to "read into the text additional limitations designed to narrow the scope of the law enforcement proviso." *Millbrook*, 569 U.S. at 55; *see also Lomax v. Ortiz-Marquez*, 140 S. Ct. 1721, 1725 (2020) ("Th[e] Court may not narrow a provision's reach by inserting words Congress chose to omit.").

The government cites cases in which *execute* is used in the context of "executing . . . warrant[s]" for purposes of criminal law enforcement. *See, e.g.*, *United States v. Ramirez*, 523 U.S. 65, 69 (1998); *Los Angeles County v. Rettele*, 550 U.S. 609, 614 (2007).  But the FTCA—unlike the statutes referenced in the *Pellegrino* dissent cited by the government—does not contain the word "warrant." *See* 937 F.3d at 185 (Krause, J., dissenting) (citing 18 U.S.C. § 2231(a); *id.* § 2234; *id.* § 3109; 22 U.S.C. § 2709(a)(2)). This distinction is meaningful because authority to execute a search does not necessarily imply authority to execute a search *warrant*. *See, e.g.*, *New Jersey v. T.L.O.*, 469 U.S. 325, 340–42 (1985) (allowing school officials to search students under certain circumstances with no warrant requirement, which would be "unsuited to the school environment").  Thus, we again decline to "insert[ ] words Congress chose to omit." *Lomax*, 140 S. Ct. at 1725.

Next, the government relies on the canon of *noscitur a sociis*—that "[w]hen a word appears in a list of similar terms, each term should be read in light of characteristics shared by the entire list." *Maner v. Dignity Health*, 9 F.4th 1114, 1123 (9th Cir. 2021). According to the government, the placement of *execute searches* in a list with *seize evidence* and *make arrests* cabins the meaning of *execute searches* to the criminal law context. But "[t]he government's premise . . . does not hold." *Osmon*, 66 F.4th at 149. While "mak[ing] arrests" only occurs in the criminal context, "government officials investigate plenty of violations of law that are civil, not criminal, in nature, and there is nothing linguistically strange about using the words 'seize evidence' in that context." *Id.*

Besides, even if we accepted the government's premise, *noscitur a sociis* would not apply here. The canon is only useful "where words are of obscure or doubtful meaning." *Russell Motor Car Co. v. United States*, 261 U.S. 514, 520 (1923); *see Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 226–27 (2008) (rejecting the invocation of this canon, among others, as an "attempt to create ambiguity where the statute's text and structure suggest none"). Moreover, "[a] list of three items, each quite distinct from the other no matter how construed, is too short to be particularly illuminating." *Graham Cnty. Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 559 U.S. 280, 288 (2010). Here, the meaning of *execute searches* is plain, and the "substantive connection" among the terms *execute searches*, *seize evidence*, and *make arrests* "is not so tight or so self-evident as to demand that we rob any one of them of its independent and ordinary significance." *Id.* (cleaned up).

Because we cannot "read into the text additional limitations," *Millbrook*, 569 U.S. at 55, we reject the

government's contention that the proviso applies only to searches executed for criminal investigations. The statute plainly provides that TSOs are officers of the United States empowered by law to execute searches for violations of Federal law.[4]

## IV

We hold that TSOs fall within the ordinary meaning of the proviso's definition of *investigative or law enforcement officers.* 28 U.S.C. § 2680(h).  Therefore, sovereign immunity does not bar Leuthauser's claims for battery and intentional infliction of emotional distress. We **REVERSE** and **REMAND** for further proceedings consistent with this opinion.

---

[4] The government's reliance on *Foster*, which held that any *ambiguity* must be interpreted in favor of the United States, is misplaced. 522 F.3d at 1079. Because the statutory text is unambiguous, we do not apply a rule of construction in favor of (or against) immunity. *See Millbrook*, 569 U.S. at 57 ("[W]e ... decline to read ... a limitation into unambiguous text."); *Osmon*, 66 F.4th at 150 (declining to apply any presumption or rule of construction to the question whether the proviso applies to TSOs). Nor do we need to address legislative history or the parties' dueling arguments on policy considerations. *See Haro v. City of Los Angeles*, 745 F.3d 1249, 1257 (9th Cir. 2014) ("Courts can only look to legislative intent when a statute is ambiguous." (cleaned up)).