JASON M. FRIERSON
United States Attorney
District of Nevada
Nevada Bar No. 7709

R. THOMAS COLONNA
Assistant United States Attorney
501 Las Vegas Blvd. So., Suite 1100
Las Vegas, Nevada 89101
(702) 388-6336
Richard.Colonna@usdoj.gov
*Attorneys for the United States*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| Michele Leuthauser,<br><br>         Plaintiff,<br><br>   v.<br><br>United States of America,<br><br>         Defendant. | Case No. 2:20-cv-00479-JCM-MDC<br><br>**Supplemental Brief to United States' Motion for Summary Judgment** |

### I. <u>Introduction</u>

The United States submits the following supplemental brief to its Motion for Summary Judgment (ECF No. 91) regarding Plaintiff Michele Leuthauser's civil battery and intentional infliction of emotional distress ("IIED") claims pursuant to the Federal Tort Claims Act ("FTCA"). *See* ECF No. 119. Plaintiff's lawsuit arises out of her pat-down at a Transportation Security Administration ("TSA") security screening checkpoint at Harry Reid International Airport ("LAS") on June 30, 2019. For purposes of brevity and judicial economy, the United States relies on its prior Introduction and Statement of Undisputed Statement of Facts ("SOF") contained its Motion for Summary Judgment. *Id.* The SOF will be cited throughout this brief.

### II. <u>Legal Standards</u>

#### A.  Fed. R. Civ. P. 12(h)(3)

The United States, as a sovereign entity, is immune from suit except insofar as it consents to be sued. *Lehman v. Nakshian*, 453 U.S. 156, 160–61 (1981) (quoting *U.S. v. Testan*, 424 U.S. 392, 399 (1976)). Statutes granting subject-matter jurisdiction "are to be

construed strictly in favor of the sovereign." *McMahon v. United States*, 342 U.S. 25, 27 (1951); *see also Metro. Water Dist. of S. Cal. v. United States*, 830 F.2d 139, 143 (9th Cir. 1987). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3); *see also MacKay v. Pfeil*, 827 F.2d 540, 543 (9th Cir. 1987).

### B.   Fed. R. Civ. P. 56

"Summary judgment shall be granted when 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Thomas v. United States*, No. 2:15-cv-00291-APG-NJK, 2017 WL 379425, at *2 (D. Nev. Jan. 25, 2017) (citation omitted); *see also* Fed. R. Civ. P. 56(a). "The moving party 'has the initial burden of showing the absence of a genuine issue of material fact.'" *Id.* (citation omitted). "'A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the differing version of events.'" *Id.* (citations omitted). "Once the moving party satisfies its initial burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine issue for trial." *Id.* (citations omitted). "The non-moving party 'may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists.'" *Id.* (citation omitted). The non-moving party "'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991) (citation omitted). "Where there is a complete failure of proof on an essential element of the nonmoving party's case, all other facts become immaterial, and the moving party is entitled to judgment as a matter of law." *Petzak v. Nevada ex rel. Dep't of Corr.*, 579 F. Supp. 2d 1330, 1334 (D. Nev. 2008) (citation omitted). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

### III. <u>Argument</u>

#### A.   The Discretionary Function Exception Bars Plaintiff's FTCA Claims.

Plaintiff complains that TSA employee Anita Serrano acted inappropriately when she performed a pat-down of Plaintiff in a way Plaintiff described as "forceful" and that

included contact with her genitals. Plaintiff's claims, however, address aspects of pre-flight screening that are susceptible to policy judgments and must be insulated from judicial scrutiny.

### 1. The discretionary function exception

The FTCA's waiver of sovereign immunity is limited by the discretionary function exception, which precludes claims against the United States and its employees "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). "It is designed to 'prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort.'" *Chadd v. United States*, 794 F.3d 1104, 1108 (9th Cir. 2015) (citation omitted). "Where the exception applies, the United States has not waived its sovereign immunity and [federal courts] lack subject matter jurisdiction over the claims." *Gonzalez v. United States*, 814 F.3d 1022, 1027 (9th Cir. 2016) (citation omitted).

In determining whether the challenged conduct falls within the discretionary function exception, the Ninth Circuit follows a two-part test. *Nieves Martinez v. United States*, 997 F.3d 867, 876 (9th Cir. 2021). "First, we ask whether the challenged actions involve 'an element of judgment or choice.'" *Id.* (quoting *United States v. Gaubert*, 499 U.S. 315, 322). If a "federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow[,]" the act is not discretionary because "the employee has no rightful option but to adhere to the directive." *Id.* (citing *Berkovitz v. United States*, 486 U.S. 531, 536). If the court determines that "the challenged actions involve an element of choice or judgment," the court then "determine[s] 'whether that judgment is of the kind that the discretionary function exception was designed to shield.'" *Id.* (citations omitted) "More specifically, if the judgment involves considerations of social, economic, or political policy, the exception applies." *Id.*

"If a defendant can show that the tortious conduct involves a 'discretionary function,' a plaintiff cannot maintain an FTCA claim, even if the discretionary act constitutes an intentional tort under § 2680(h)." *Gasho v. United States*, 39 F.3d 1420, 1434 (9th Cir. 1994).

### 2. The particular TSA screening procedures at issue here involve discretion, judgment, and choice.

The first step of the discretionary function analysis is satisfied if no "'federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow.'" *Morales v. United States*, 895 F.3d 708, 713 (9th Cir. 2018) (citation omitted).

TSA, in order to meet its general mandate in 49 U.S.C. § 44901 to "provide for the screening of all passengers," created a set of Screening Checkpoint Standard Operating Procedures which are applicable nationwide. ECF No. 91-2, Ex. A ¶ 13. *See also* 49 U.S.C. § 114(f)(3) ("additional powers and duties" of the TSA Administrator include "develop[ing] policies, strategies, and plans for dealing with threats to national security"); 49 U.S.C. § 44903(b)(3) (instilling TSA Administrator with power to "prescribe regulations to protect passengers and property on an aircraft" to include "a uniform procedure for searching" passengers to endure their safety). In other words, there is "no 'federal statute, regulation, or policy [that] specifically prescribes a course of action for an employee to follow' when conducting" security screening – the TSA Administrator is charged with creating such a scheme. *Nieves Martinez*, 997 F.3d at 876 (citing *Berkovitz*, 486 U.S. at 536). Accordingly, the appropriateness of TSA's security screening procedures as applied here – in other words, whether Serrano needed to conduct a pat-down of Plaintiff and how she performed the pat-down – satisfies the first prong of the discretionary function analysis.

### 3. The alleged acts or omissions are susceptible to policy analysis.

In the second step of the discretionary function analysis, courts "consider whether the discretion 'is of the kind that the discretionary function exception was designed to shield'—namely, 'only governmental actions and decisions based on considerations of public policy,'" which typically refers to considerations grounded in social, economic, and political policy. *Morales,* F.3d at 713-14 (citation omitted). The "'focus of the inquiry is not

on the agent's subjective intent in exercising the discretion . . . but on the nature of the actions taken and on whether they are susceptible to policy analysis.'" *Chadd*, 794 F.3d at 1109 (citation omitted).

TSA's security screening processes and how TSA trains its screening employees to conduct a pat-down and address the concerns of reluctant or anxious passengers fall within this policy realm. *See Plater v. United States*, 359 F. Supp. 3d 930, 941 (C.D. Cal. 2018) (citing *Cloes v. City of Mesquite*, 582 F. App'x 721, 727 (9th Cir. 2014)). "The Ninth Circuit has repeatedly found that decisions relating to training, hiring, and supervision 'fall squarely within the discretionary function exception.'" *McSwain v. United States*, 2017 WL 901772 (D. Nev. Mar. 7, 2017) (dismissing negligent training claim regarding TSA canine handler).

When confronted with a reluctant, anxious passenger, Serrano followed her training and attempted to complete the pat-down as efficiently as possible. ECF No. 91-7, Ex. C, Serrano Dep., 9:15-24; 31:18-24; 50:3-22; 52:9-25; 58:23-25; 59:5-18; 61:1-5. TSA pat-downs can necessarily extend to touching sensitive areas of a passenger's body, including the pelvis, buttocks, and inner thighs, and pat-downs must be done with sufficient pressure to ensure that there are no prohibited items concealed on the passenger. ECF No. 91-2, Ex. A. ¶¶ 24-25. The amount of force required is determined by the screener performing the pat-down. *Id*. at ¶ 25. Because the discretionary-function exception applies here, the United States is entitled to dismissal of Plaintiff's tort claims.

**B.     The United States is Entitled to the Defense of Privilege.**

The defense of privilege applies to any asserted tort and extends to acts that are "necessary for the protection of some interest of the actor or of the public which is of such importance as to justify the harm caused or threatened by its exercise," or where the defendant "is performing a function for the proper performance of which freedom of action is essential." Restatement of Torts § 10(2)(b) and (c). Privilege extends to non-consensual acts "based either upon the value attached to the interest to be protected or advanced by their exercise, or upon the necessity of giving to certain functionaries that freedom of action necessary to the proper performance of their functions." *Id*. at Comment d. The acts subject

to this defense are protected if "done for the purpose of protecting or advancing the particular interest." *Id.* "Nonconsensual privileges are given by law for the protection of the interests of the actor, of third persons or of the public." Restatement of Torts § 890, Comment a.

Under this doctrine, a TSA screener's action would be privileged if the screener were in compliance with the Fourth Amendment as determined by federal law. *Cf. Rhoden v. United States*, 55 F.3d 428, 431–32 (9th Cir. 1995) n. 5 (9th Cir. 1995) (explaining that privilege stems from the intersection of constitutionality and the elements of the alleged tort). Serrano's pat-down of Plaintiff to clear alarms falls within the Fourth Amendment's contours; the Ninth Circuit has determined that TSA screening prior to commercial flight is indeed constitutional under the administrative search doctrine "provided that it 'is no more extensive nor intensive than necessary, in light of current technology, to detect the presence of weapons or explosive [and] that is confined in good faith to that purpose.'" *United States v. Aukai*, 497 F.3d 955, 962 (9th Cir. 2007).

Plaintiff subjectively found the circumstances of her pat-down "uncomfortable." ECF No. 91, SOF ¶¶ 56, 59. Plaintiff describes the pressure used in her pat-down as "forceful" and "painful," and that the pat-down included contact between the edge of Serrano's hand with her genitals where the leg meets resistance from the torso. ECF No. 91, SOF ¶¶ 63-64.[1] Personal discomfort with the circumstance of a required pat-down, however, does not make the pat-down unconstitutional.

Plaintiff describes adverse reactions and responses to a pat-down procedure that is permissible under the Fourth Amendment. *See, e.g., United States v. Marquez*, 410 F.3d 612, 618 (9th Cir. 2005). *See also* ECF No. 91-2, Ex. A. ¶ 25. Irrespective of how subjectively uncomfortable she found the experience, Plaintiff offers no objective indication that her screening departed from the necessary elements of a permissible pat down. Her efforts to imbue the process with impermissible intent rests on subjective characterizations about the

---

[1] Serrano disputes Plaintiff's account of where she was touched. ECF No. 91 at SOF ¶ 63 n.7.

location and forcefulness of the touching necessary to ensure no prohibited items were concealed on her person. From an objective standpoint, the evidence is consistent with a pat-down pursuant to TSA's procedures.[2] As a result, the United States is entitled to invoke the defense of privilege to defeat Plaintiff's intentional tort claims.

**C.    Plaintiff is Unable to Establish a Claim for IIED.**

**1.    Defendant's conduct was not extreme or outrageous.**

The FTCA claims are governed by Nevada law as the state where the allegedly tortious act occurred. *See Louie v. United States*, 776 F.2d 819, 824 (9th Cir. 1985); 28 U.S.C. §§ 1346(b)(1), 2674. Under Nevada law, to prevail on an IIED claim, a plaintiff must prove (1) extreme and outrageous conduct; (2) intent or reckless disregard for the causing of emotional distress; (3) severe or extreme emotional distress; and (4) causation. *Evans v. Lander Cty. Hosp. Dist.*, No. 3:19-cv-00464-LRH-WGC, 2021 WL 1933933, at *6 (D. Nev. May 13, 2021) (citing *Star v. Rabello*, 625 P.2d 90, 91-92 (Nev. 1981)).

"[E]xtreme and outrageous conduct is that which is 'outside all possible bounds of decency' and is regarded as 'utterly intolerable in a civilized community.'" *Maduike v. Agency Rent-A-Car,* 953 P.2d 24, 26 (Nev. 1998). Stress or humiliation alone does not support a claim for IIED. *See Kennedy v. Carriage Cemetery Services, Inc.*, 727 F. Supp. 2d 925, 933 (D. Nev. 2010). Liability for emotional distress generally does not extend to "'mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.'" *Candelore v. Clark County Sanitation Dist.*, 752 F. Supp. 956, 962 (D. Nev. 1990) (quoting Restatement (Second) of Torts § 46 cmt. D (1965), *aff'd*, 975 F.2d 588 (9th Cir. 1992)).

TSA's screening equipment alarmed in three areas on Plaintiff. ECF No. 91, SOF ¶ 38. Because of these alarms, TSA policy required a localized pat-down of these areas to ensure no prohibited items were present. ECF No. 91, SOF ¶¶ 18-21. During that process, incidental contact with the genitals could occur. ECF No. 91, SOF ¶ 30. While Plaintiff's

---

[2] To the extent that Plaintiff challenges the pat-down procedure itself, such a challenge is foreclosed by 49 U.S.C. § 46110(a), which requires challenges to TSA's orders to be heard in the U.S. Courts of Appeals.

Complaint, ECF No. 4, embellishes the allegations to suggest a sexual battery, Plaintiff specifically testified that she never stated she was "fondled" by Serrano, nor did Plaintiff even know what the word "fondle" meant. ECF No. 91-12, Ex. H, Leuthauser Dep. at 118:6-19:1-11.

At its core, Plaintiff's claim arises from her misperception of the situation: that her pat-down was not necessary and that Serrano was abrasive. Even assuming Plaintiff's account of the pat-down is true and the pat-down was forceful and included contact with her genitals, there is no evidence to support that this conduct that was extreme and outrageous to support a claim for IIED.

### 2.   Plaintiff cannot show causation.

Nevada uses a sliding-scale approach to proving a claim for IIED. Under the sliding-scale approach, while medical evidence is one acceptable manner in establishing that severe emotional distress was suffered for purposes of an IIED claim, other objectively verifiable evidence may suffice to establish a claim when the defendant's conduct is more extreme. *See Franchise Tax Bd. of Cal. v. Hyatt*, 335 P.3d 125, 148 (Nev. 2014), vacated on other grounds by *Franchise Tax. Bd. of Cal. v. Hyatt*, 136 S. Ct. 1277 (2016)). "[E]xpert causation testimony is not required where 'the connection is a kind that would be obvious to laymen, such as a broken leg from being struck by an automobile.'" *Alfaro v. D. Las Vegas, Inc.*, No. 2:15-cv-012190-MMD-PAL, 2016 WL 4473421, at *15 (D. Nev. Aug. 24, 2016) (quotations omitted). However, when "the cause of injuries is not immediately apparent, the opinion as to the cause should be given by one qualified as a medical expert." *Elliott v. Prescott Companies, LLC*, No. 2:15-cv-01143-APG-VCF, 2018 WL 3731087, at *5 (D. Nev. Aug. 6, 2018), appeal dismissed *sub nom. Elliott v. Oakridge Indus., Inc.*, No. 18-16557, 2018 WL 7298162 (9th Cir. Dec. 4, 2018) (citing *Lord v. State*, 806 P.2d 548, 551 (1991)).

After her pat-down concluded, Plaintiff spoke with Officer Dempsey Lauderdale of the Las Vegas Metropolitan Police Department, assigned to provide law enforcement support at LAS. ECF No. 91-10, Ex. F, Lauderdale Dep., 8:14-17, 10:21-11:1. Officer

Lauderdale described Plaintiff as "very somber" as she explained she "went through the screening process and was very uncomfortable with the process." *Id*. at 16:11-18. Plaintiff also spoke with her husband, describing herself as stunned, shaky, and embarrassed at the time. ECF No. 91-12, Ex. H, Leuthauser Dep., 144:14-18. Her husband described her as "very distraught." Ex. N hereto, Leuthauser depo., 25:17. Nothing in these descriptions would lead one to conclude that the connection between her pat-down and her IIED would be obvious to laymen.

Plaintiff had complex pre-existing mental health issues before June 30, 2019, for which she regularly sought mental health treatment. ECF No. 91, SOF ¶¶ 73-74. Plaintiff testified that the pat-down "exacerbated" her pre-existing emotional state. *Id*., SOF ¶ 75. Plaintiff continued mental health treatment regularly after June 30, 2019. *Id*., SOF ¶ 74. However, Plaintiff did not identify or designate any expert or mental health professional to testify on her behalf in the case to opine that her mental health complaints were exacerbated by the pat-down. Plaintiff intends to testify on her own behalf. *Id*., SOF ¶ 79 (citing Plaintiff's Fed. R. Civ. P. 26 disclosure of witnesses with relevant knowledge of claims and defenses).

Plaintiff is not a mental health expert, and it is not sufficient for Plaintiff to testify on the issue as to what, if anything, was exacerbated. To demonstrate causation, Plaintiff needed to properly disclose a mental health expert. Because Plaintiff is unable to establish that the pat-down was a causal connection to her alleged emotional distress, her IIED claim fails.

### D.    Plaintiff Failed To Properly Identify and Disclose Her Alleged Damages.

Assuming Plaintiff can overcome the evidentiary burden discussed above, she altogether failed to properly disclose and compute her alleged damages. Accordingly, Plaintiff should not be permitted to introduce additional evidence supporting her damages calculation.

Litigants must include a computation of damages in their initial disclosures. *Munn v. Hotspur Resorts Nevada, Inc.,* No. 2:19-cv-00693-GMN-NJK, 2020 WL 7323345, at *1 (D.

Nev. Oct. 20, 2020). Rule 26 also requires the disclosing party to "make available the supporting documents" for its damages' computation. Advisory Committee Notes to 1993 Amendments. The disclosing party has a duty to supplement incomplete or inaccurate disclosures "in a timely manner." Fed. R. Civ. P. 26(e); *see also Jackson v. United Artists Theatre Cir., Inc.*, 278 F.R.D. 586, 593 (D. Nev. 2011).

Plaintiff neglected to produce a computation of damages. ECF No. 91, SOF ¶ 78. Instead, Plaintiff only disclosed that she is seeking "5 figures" even though her lost wages are "practical to compute." *Id.* While Plaintiff's discovery responses note an "ongoing" damage of $2900 a month, when asked under oath during her deposition to quantify her damages, she could not specify what wages she had lost. ECF No. 91, SOF ¶¶ 72, 78. Plaintiff's discovery responses further neglected to properly quantify her purported damages. *See id.* (ECF No. 91, Ex. K Nos. 2 an 8 and Ex. M Nos. 2 and 8). Plaintiff should not now, at this late date, be permitted to produce evidence of her damages.

## IV.  Conclusion

For the reasons stated above and in its original Motion, Defendant United States respectfully requests dismissal of Plaintiff's tort claims or, in the alternative, summary judgment as to her IIED claim and an inability to introduce supplemental evidence calculating her damages.

Respectfully submitted this 1st day of February 2024.

JASON FRIERSON
United States Attorney


 */s/ R. Thomas Colonna*
R. THOMAS COLONNA
Assistant United States Attorney